**TOWN OF FLOWER MOUND,**
Texas, Petitioner,

v.

**STAFFORD ESTATES LIMITED PARTNERSHIP,**
Respondent.

No. 02–0369.

Supreme Court of Texas.

Argued March 5, 2003.

Decided May 7, 2004.

April M. Virnig, Taylor Olson Adkins Sralla, Fort Worth, for Amicus Curiae City of Aledo et al.

Sarah J. Fullenwider, Asst. City Atty., Fort Worth, for Amicus Curiae City of Fort Worth.

Debbie Lopez–Carr, Office of City Atty., Irving, for Amicus Curiae City of Irving, Texas.

L. Stanton Lowry, Boyle & Lowry, LLP, Irving, for Amicus Curiae City of Keller, Texas.

Christopher G. Senior, for Amicus Curiae National Association of Home Builders.

J. David Breemer, James S. Burling, Sacramento, CA, for Amicus Curiae Pacific Legal Foundation.

Kimberly R. Lafferty, Plano Asst. Atty., Plano, for Amicus Curiae Plano Assistant Attorney.

Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, for Amicus Curiae Texas Association of Builders.

Scott Houston, Austin, for Amicus Curiae Texas Municipal League et al.

Gary S. Spencer, Sunnyvale, for Amicus Curiae Town of Sunnyvale, Texas.

Robert F. Brown, Terrence S. Welch, Brown & Hofmeister, Dallas, for Petitioner.

Bruce W. Bringardner, Thompson Coe Cousins & Irons, LLP, John L. Freeman, Moseley Martens, LLP, Dallas, Gregory P. Standerfer, Standerfer Law Firm, Southlake, for Respondent.

Justice HECHT delivered the opinion of the Court.

The Town of Flower Mound's Land Development Code requires that a subdivision developer improve abutting streets that do not meet specified standards, even if the improvements are not necessary to accommodate the impact of the subdivision. Accordingly, the Town conditioned its approval of Stafford Estates Limited Partnership's development of a residential subdivision on Stafford's rebuilding an abutting road. Stafford rebuilt the road and then sued the Town to recover the cost. The district court held that the condition imposed on Stafford's development was a taking without compensation in violation of article I, section 17 of the Texas Constitution,[1] the Fifth Amendment to the

---

1. TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person....").

United States Constitution,[2] and the federal Civil Rights Act of 1871,[3] and awarded Stafford the cost of improvements not necessitated by increased traffic from the subdivision. The district court also awarded Stafford expert witness fees and attorney fees under the federal Civil Rights Attorney's Fees Awards Act of 1976.[4] The court of appeals reversed the award of expert witness fees and attorney fees and otherwise affirmed.[5]

The three principal questions now before us are whether Stafford could wait until after making the improvements to sue, whether the Town's condition on Stafford's development amounted to a compensable taking, and whether Stafford is entitled to recover fees under federal civil rights laws. We agree with the court of appeals that Stafford is entitled under the Texas Constitution to adequate compensation for the taking of its property but is not entitled to recover under federal civil rights laws. We thus affirm the judgment of the court of appeals.

**I**

The Town of Flower Mound is a fast-growing suburban municipality (1990 pop. 15,527; 2000 pop. 50,702) in between Dallas, Fort Worth, and Denton. The Town's Stafford Estates subdivision consists of some 247 homes on 90 acres bounded on the north by McKamy Creek Road and on the west by Simmons Road. Both roads are in the Town's right-of-way and are not part of the subdivision.

Over a period from 1994 to 1997, the Town approved the development of Stafford Estates in three roughly equal phases. Phases II and III abutted Simmons Road, which was at the time a two-lane asphalt road designated by the Town as a "rural collector roadway". Section 4.04(o) of the Town's Land Development Code provided that for all subdivisions and industrial areas, "[a]butting substandard local and collector streets shall be constructed or reconstructed as necessary by the developer to bring them up to minimum standards, and all right-of-way ... dedicated to the Town, with no cost participation from the Town." [6] One such minimum standard, prescribed by section 4.04(b) of the Code, was that "all builders/developers shall be required to construct concrete streets according to the Engineering Standards Manual." [7] Based on these provisions, the Town conditioned its approval of the plats for Phases II and III on Stafford's rebuilding Simmons Road with concrete instead of asphalt.

**2.** U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation.").

**3.** 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....").

**4.** *Id.* § 1988(b) (Attorney's fees) ("In any action or proceeding to enforce a provision of

... [42 U.S.C. § 1983] ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....") and (c) (Expert fees) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of [42 U.S.C. §§ 1981 or 1981a], the court, in its discretion, may include expert fees as part of the attorney's fee.").

**5.** 71 S.W.3d 18 (Tex.App.-Fort Worth 2002).

**6.** FLOWER MOUND, TEX., CODE ch. 12, § 4.04(o) (1994) (now codified as CODE § 90–316(1) (2002)).

**7.** *Id.* § 4.04(b) (now codified as CODE § 90–302 (2002)).

Stafford objected to this condition and requested an exception under section 4.04(a) of the Code, which stated:

The Town Council may grant an exception to the street design standards as contained in this section, provided that the Council finds and determines that such standards work a hardship on the basis of utility relocation costs, right-of-way acquisition costs, and other related factors.[8]

Stafford argued that it should not be required to pay more than half the cost of rebuilding Simmons Road with concrete. The asphalt surface was not in disrepair, and the Town had made no attempt to determine whether the required improvements were roughly proportional to the impact of the subdivision on Simmons Road in particular or on the Town's roadway system as a whole. Although the Town had exercised its discretion to grant exceptions to other developers on a project-by-project basis, Stafford's request was denied.

After objecting to the condition on its development at every administrative level in the Town, all to no avail, Stafford rebuilt Simmons Road with concrete as the Town had required at a cost of $484,303.79, transferred the improvements to the Town, and then demanded reimbursement for what it asserted was the Town's proportionate share of the expense. When the Town still refused to pay any part of the cost, Stafford sued, alleging that by conditioning development of Stafford Estates on improving Simmons Road, the Town had taken Stafford's property without compensation in violation of the state and federal constitutions and federal law.

By agreement, the takings issue was submitted to the district court on stipulated facts, although after the court announced its ruling, it allowed the Town to submit some testimony by way of a bill of exception,[9] which the court appears to have considered in overruling the Town's request for reconsideration of its ruling. Stafford argued that the applicable standard under state and federal law for determining whether there was a taking in these circumstances was that announced by the United States Supreme Court in *Nollan v. California Coastal Commission*[10] and *Dolan v. City of Tigard*.[11] The Town argued that *Nollan* and *Dolan* were inapplicable and that even by their standard the condition on Stafford's development was not a taking. The court agreed with Stafford and determined that the condition—

- "did not substantially advance a legitimate state interest attributable to the impact of the development of Stafford Estates";

- "was not roughly proportional to any services provided by the Town to Stafford Estates or a burden placed on the Town by Stafford Estates";

- was "in substantial excess of the special benefits accruing" to Stafford by the improvement of Simmons Road; and

- "constituted a taking of property for public use without just or adequate compensation in violation of Article I, § 17 of the Texas Constitution, the Fifth Amendment to the U.S. Constitution and 42 U.S.C. § 1983."

The court then heard evidence on damages, as well as on costs recoverable by federal statute. The Town stipulated that Stafford's expenses incurred in rebuilding

---

8. *Id.* § 4.04(a) (now codified as CODE § 90–301 (2002)).

9. *See* TEX.R.APP. P. 33.2.

10. 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

11. 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

Simmons Road with concrete were reasonable and necessary. The court awarded Stafford damages of only $425,426 without explaining the reduction of $58,877.79, or about 12.2%, from the actual cost. The court also awarded Stafford $20,000 expert witness fees, $175,000 attorney fees through judgment, $42,500 attorney fees post-judgment contingent on various appeals, and pre- and post-judgment interest.

Both parties appealed, Stafford complaining only that it was entitled to recover all of its construction costs.[12] At the outset, the court of appeals rejected the Town's argument that Stafford's action was barred because it did not sue before rebuilding Simmons Road and obtaining approval of its development plan, concluding that no statute or rule required Stafford to sue earlier than it did.[13] Turning to the takings issue, the court read *Nollan* and *Dolan* to set forth a two-part test (set out below) for determining whether a compensable taking has occurred whenever "the government conditions the granting of permit approval, plat approval, or some other type of governmental approval on an exaction from the approval-seeking landowner."[14] "Generally," the court said, "any requirement that a developer provide or do something as a condition to receiving municipal approval is an exaction."[15] The court rejected the Town's argument that the *Nollan/Dolan* test applies only when the government exaction is the dedication of an interest in property, not when permit approval is conditioned on an expenditure of money.[16] The court determined

that the Supreme Court had not so limited the test and reasoned that non-dedicatory exactions pose no less danger that the government may threaten withholding of approval in order to extract from an applicant some benefit or concession it could not otherwise require.[17] The court did not reach the Town's argument that the *Nollan/Dolan* test applies only when the government acts on an ad hoc, adjudicative basis, as when making individual permitting decisions, as opposed to a general, legislative, policy basis, as when adopting ordinances and codes.[18] Even if the Town were correct, the court concluded, the Town's denial of Stafford's request for an exception when it had granted exceptions to other developers showed that its decision was a discretionary one based on individual circumstances rather than a ministerial enforcement of its code based on general policy considerations.[19]

The court of appeals thus concluded that the *Nollan/Dolan* test applied to Stafford's federal takings claim and should also apply to its state takings claim since the parties did not argue that federal and state law are or should be different in this regard.[20] That "two-pronged" test for determining that an exaction is not a taking, the court said, is "that an essential nexus exist between the exaction and a legitimate state interest and that the exaction be roughly proportional to the public consequences of the requested land use."[21] The burden of proof, the court added, was on the Town to prove that the condition imposed on Stafford met the test.[22]

12.  71 S.W.3d 18, 44 n. 21.

13.  *Id.* at 28.

14.  *Id.* at 30 (footnote omitted).

15.  *Id.* n. 7.

16.  *Id.* at 31–34.

17.  *Id.*

18.  *Id.* at 34–36.

19.  *Id.*

20.  *Id.* at 37–38.

21.  *Id.* at 31.

22.  *Id.* at 38.

As to the "essential nexus" prong, the court concluded that the existence of an essential nexus between the exaction—the condition that Simmons Road be rebuilt—and the interests claimed by the Town—traffic safety and road durability—was demonstrated as long as the exaction did not "utterly fail" to advance those interests.[23] The court held that the Town had easily met this lax burden.[24]

As to the "roughly proportional" prong, the court determined that the relevant comparison was between the cost of the Simmons Road improvements and the impact of the subdivision on that roadway rather than on the Town's entire roadway system.[25] The court noted that "Stafford's traffic study evidence showed that the Subdivision would produce about 750 vehicle trips per day, or about 18% of the total average traffic on the improved portion of Simmons Road",[26] and that "[t]he Town did not put on any evidence to show how much additional roadway traffic the Subdivision would create."[27] The Town argued that the development's true impact was far broader and was reflected in the road impact fees the Town was allowed by statute and ordinance to assess and collect to pay for capital improvements to its roadway system.[28] The amount of those fees was determined by apportioning the total cost of such improvements among all new developments, whatever their nature, but by ordinance the Town discounted the fee for residential developments from $3,560 to $1,140 per dwelling. The Town argued that the amount of the discount—for Stafford, from $879,234 to $281,580, or nearly $600,000—reflected the impact on traffic that was not compensated by impact fees and was "roughly proportional to the amount of money Stafford had paid to construct the Simmons Road improvements."[29] The court rejected this argument for two reasons. First, Simmons Road was not included in the Town's capital improvements plan and thus could not be improved using impact fees.[30] The court "fail[ed] to grasp how requiring a developer to improve an existing road that is *not* on a city's capital improvements plan is in any way related to the impact a development will have on roads that *are* on the city's capital improvements plan."[31] More importantly, the court concluded, the Town simply could not explain how a subdivision's impact on adjacent roadways could be measured by what the Town could have charged for citywide road improvements but chose not to.[32] Thus, the court held:

> On this record, the Town has not met its burden of demonstrating that the additional traffic generated by the Subdivision bears a sufficient relationship to the requirement that Stafford demolish a nearly new, two-lane asphalt road that was not in disrepair and replace it with a two-lane concrete road. Undoubtedly, the additional traffic (750 trips per day) generated by the Subdivi-

23. *Id.* at 39–40.

24. *Id.*

25. *Id.* at 40–41.

26. *Id.* at 41.

27. *Id.*

28. *See* TEX. LOC. GOV'T CODE §§ 395.001–.082; FLOWER MOUND, TEX., CODE §§ 42–71 to 42–80 (2002).

29. 71 S.W.3d at 42.

30. *See* TEX. LOC. GOV'T CODE §§ 395.012–.013.

31. 71 S.W.3d at 42–43.

32. *Id.* at 42–43.

sion will increase wear and tear and create additional safety concerns on the Town's roads and Simmons and McKamy Creek Roads in particular. But the Town has not explained why demolishing the asphalt road and replacing it with a cement road, as opposed to improving the asphalt road, was required because of the Subdivision's impact. To the contrary, the Town's experts admitted that all of the Town's safety objectives could have been accomplished just as effectively by simply improving the asphalt road. The Town likewise has not explained how the Subdivision's impact created a specific need for a more durable surfacing of Simmons Road. Consequently, the Simmons Road improvement condition requiring Stafford to demolish a portion of Simmons Road, to repave it with concrete, and to bear 100% of the costs, fails the second, rough proportionality prong of the *Dolan* test.

\*　　\*　　\*

In summary, the Town's requirement that Stafford tear up a nearly new two-lane asphalt road—that could be improved with asphalt to address the Town's legitimate safety concerns—and replace it with a two-lane concrete road bears little or no relationship to the proposed impact of the Subdivision on the Town's roadway system, specifically Simmons Road. While the Town's interest in the durability of its roads is a legitimate interest, the demolish-and-replace-with-concrete aspect of the Simmons Road improvements condition sim-

ply bears no relationship to the public consequences generated by the Subdivision and is not roughly proportional to the traffic impact of the Subdivision on Simmons Road. Accordingly, this condition to plat approval does not meet the *Dolan* test's rough-proportionality requirement and instead effected a taking without adequate compensation under article I, section 17 of the Texas Constitution.[33]

On the issue of damages, the court concluded that the proper measure under the circumstances was the cost of the exaction—Stafford's expense in rebuilding Simmons Road—less the cost of roadway improvements necessitated by the subdivision that the Town could properly have required Stafford to make, less the value of any special benefits[34] of the improvements to the subdivision.[35] The court assigned the burden of proof to Stafford on the first two elements of this equation and to the Town on the value of any special benefits.[36] The parties stipulated the reasonable and necessary expense of rebuilding Simmons Road. In determining the cost of improvements due to the subdivision's impact, the court stated that "[n]o precise mathematical formula is necessary", and concluded that by awarding Stafford only about 87.8% of its actual expenses the district court properly took into account the cost of improvements Stafford was properly required to make.[37] The Town, the court concluded, had failed to prove any special benefits to the subdivision from improvements beyond those required to accommodate the increased

---

33. *Id.* at 43–44.

34. *See Haynes v. City of Abilene,* 659 S.W.2d 638, 641–642 (Tex.1983) ("[T]he term 'special benefit' connotes an enhancement more localized than a general improvement in community welfare, but not necessarily unique to a given piece of property. A special benefit is one going beyond the general benefit sup-

posed to diffuse itself from the improvement through the municipality.").

35. 71 S.W.3d at 44–46.

36. *Id.* at 45 n. 22, 46.

37. *Id.* at 46.

traffic.[38] Accordingly, the court upheld the damages awarded by the district court.[39]

Finally, the court reversed the award of expert witness fees and attorney fees to Stafford. The court reasoned that "[b]ecause Stafford is afforded just compensation based on its state-law takings claim, its federal claims under the Fifth Amendment and section 1983 will never mature."[40] Thus, the court concluded, "Stafford has not suffered a federal constitutional injury. Consequently, Stafford cannot prosecute its section 1983 takings claim or be a prevailing party under section 1988."[41]

We granted both parties' petitions for review.[42]

**II**

We first consider the Town's argument that this action is barred because Stafford did not sue until after it had rebuilt Simmons Road and obtained final approval of its development plan. It is in the public interest, the Town contends, for the government to have the opportunity to withdraw a condition of approval that is found to constitute a taking and thereby avoid the expense to taxpayers of money damages. That opportunity is lost if suit may be brought after the condition has been satisfied and the landowner's only remedy is a damage award. Moreover, the Town adds, it is simply unfair for an applicant to accept the benefits of an approved plan of development and later challenge the conditions of that approval. The Town urges that we "adopt a standard that requires developers to first seek to strike down conditions that they believe are unconstitutional before accepting the conditions and irreparably changing the status quo". The Town does not address the obvious concern that such a standard would pressure landowners to accept the government's conditions rather than suffer the delay in a development plan that litigation would necessitate. The Town concedes that no statute, rule, or Texas case supports its argument but nonetheless insists that post-approval actions like Stafford's must be barred as a matter of public policy as courts in other states have done.

Generally, "the State's public policy is reflected in its statutes."[43] On the subject of whether an action like this one must be brought before the challenged condition is satisfied, Texas statutes are silent, although they speak at length and in detail to other matters regarding local regulation of property development.[44] There is nothing in this statutory framework to suggest

---

**38.** *Id.* at 46–47.

**39.** *Id.* at 47.

**40.** *Id.* at 49.

**41.** *Id.* at 51.

**42.** 46 Tex. Sup.Ct. J. 230 (Dec. 12, 2002). We have received a number of amicus briefs. Amici curiae in support of the Town: Texas Municipal League; Texas City Attorneys Association; International Municipal Lawyers Association; Cities of Aledo, Azle, Bridgeport, Corinth, Everman, Fort Worth, Granbury, Haltom City, Irving, Keller, Kennedale, Ovilla, Plano, Red Oak, River Oaks; Town of Sunnyvale. Amici curiae in support of Stafford: Pacific Legal Foundation; National As-

sociation of Home Builders; Texas Association of Builders, Inc.

**43.** *Texas Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 250 (Tex.2002); *accord Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 373 (Tex.2001); *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001) (" 'Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.' ") (citation omitted).

**44.** *See e.g.* TEX. LOC. GOV'T CODE §§ 211.001–.021 (relating to municipal zoning

that the time for bringing an action like this one is constrained by anything other than the applicable statute of limitations, which the Town does not argue would bar the present action.

The Town argues instead that courts in other jurisdictions have required as a matter of good policy that a suit challenging a condition of land development be brought before the condition is satisfied. This appears to have been the case in California,[45] but the California Legislature has since codified procedures for challenging development exactions, dedications, and other conditions imposed on a development project.[46] The statute allows a landowner to tender the cost of compliance with the condition, give notice of protest, continue

with development, and then sue.[47] If successful, the landowner is entitled to a refund.[48] Thus, the California statute, unlike caselaw which preceded it, attempts to accommodate not only the government's interest in avoiding damages but also developers' interest in avoiding delay.

The Town cites two other cases that are somewhat supportive of its argument, one decided by the Minnesota Court of Appeals,[49] and the other by the Washington Court of Appeals,[50] although, as the court of appeals noted in this case, both cases pointed to statutes in their respective states.[51] The Town also cited a case from the Connecticut Appellate Court, but that case involved an appeal from a zoning commission's denial of subdivision and spe-

authority); *id.* §§ 212.001–.903 (relating to municipal regulation of subdivisions and property development); *id.* §§ 231.001–.231 (relating to county zoning authority); *id.* §§ 232.001–.107 (relating to county regulation of subdivisions).

45. *See County of Imperial v. McDougal,* 19 Cal.3d 505, 138 Cal.Rptr. 472, 564 P.2d 14, 18 (1977) ("A number of cases have held that a landowner or his successor in title is barred from challenging a condition imposed upon the granting of a special permit if he has acquiesced therein by either specifically agreeing to the condition or failing to challenge its validity, and accepted the benefits afforded by the permit."), appeal dismissed for lack of a substantial federal question by 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977); *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.,* 172 Cal.App.3d 914, 218 Cal. Rptr. 839, 854 (1985) ("Generally, a landowner who accepts and complies with the conditions of a building permit cannot later sue the issuing public entity for inverse condemnation for the cost of compliance. Instead, the property owner is generally limited to having the condition invalidated by a proceeding for writ of mandate.") (citations omitted); *Pfeiffer v. City of La Mesa,* 69 Cal.App.3d 74, 137 Cal. Rptr. 804, 806 (1977) ("It is fundamental that a landowner who accepts a building permit and complies with its conditions waives the right to assert the invalidity of the conditions

and sue the issuing public entity for the costs of complying with them.").

46. CAL. GOV'T CODE § 66020 (1997); *see Hensler v. City of Glendale,* 8 Cal.4th 1, 32 Cal.Rptr.2d 244, 876 P.2d 1043, 1055 n. 9 (1994) (§ 66020 created a "limited exception" under which a residential housing developer may challenge a permit condition while proceeding with development).

47. CAL. GOV'T CODE § 66020 (1997).

48. *Id.*

49. *Crystal Green v. City of Crystal,* 421 N.W.2d 393 (Minn.App.1988) (citing MINN.STAT. § 462.361, providing that a "person aggrieved by an ordinance, rule, regulation, decision or order of a governing body" may seek review by "appropriate remedy" in court).

50. *Trimen Dev. Co. v. King County,* 65 Wash. App. 692, 829 P.2d 226 (1992) (holding that claims for refund of park development fees were barred by the 30–day limitation period for challenging a plat), *aff'd on other grounds,* 124 Wash.2d 261, 877 P.2d 187 (1994) (holding that the three-year statute of limitations for money unlawfully received applied, and that the fees were lawfully imposed and voluntarily paid).

51. 71 S.W.3d at 27.

cial use permits on facts too different to be instructive here.[52] Stafford argues that an Eighth Circuit case is to the contrary.[53] We do not find any of these cases compelling. None contains a discussion of the problems that delay presents to the government and landowners alike, which the California statute attempts to balance. We are not convinced that we should attempt to craft such procedures by decision.

The Town does not attempt to characterize its argument as waiver or estoppel. Certainly, as the parties stipulated, Stafford objected to the condition at every opportunity, and the Town was well aware of Stafford's position. As for the Town's argument that allowing Stafford to sue is unfair, if the Town had been truly concerned about the prospect of paying Stafford damages, it could have offered to allow Stafford to defer rebuilding Simmons Road and escrow the cost pending a judicial determination of the validity of the condition, thereby assuring a fund for payment if the Town won that would be returned to Stafford if it won.[54] In sum, we find the Town's arguments unconvincing. No limitation barring Stafford's suit exists, and we decline the invitation to create one.

## III

We come now to the parties' takings arguments. Earlier this Term in Sheffield

Development Co. v. City of Glenn Heights, we observed that "[p]hysical possession is, categorically, a taking for which compensation is constitutionally mandated, but a restriction in the permissible uses of property or a diminution in its value, resulting from regulatory action within the government's police power, may or may not be a compensable taking."[55] We acknowledged, as has the United States Supreme Court, that "[c]ases attempting to decide when a regulation becomes a taking are among the most litigated and perplexing in current law."[56]

To determine whether government regulation of property, in the words of Justice Oliver Wendell Holmes, "goes too far [so as to] be recognized as a taking,"[57] the Supreme Court has employed different analytical structures depending on the nature and effect of the regulation involved.[58] Nollan and Dolan involved exactions imposed by the government as a condition of its approval of land development. Stafford's takings claims are based solely on these two decisions and not, for example, on the "unreasonable regulatory interference" analysis employed by the Supreme Court in Penn Central Transportation Co. v. City of New York[59] and by this Court in Sheffield. Stafford and the Town agree that if by the standard of Nollan and Dolan the Town's actions constituted a

52. *Weatherly v. Town Plan & Zoning Comm'n*, 23 Conn.App. 115, 579 A.2d 94, 97 (1990) ("One who seeks to avail himself of the benefits of a zoning regulation is precluded from raising the question of that regulation's constitutionality, or of that regulation's validity, in the same proceeding.").

53. *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269 (8th Cir.1994).

54. *See City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex.1984) (stating that parties agreed to escrow charge imposed in lieu of parkland dedication pending completion of court challenge to exaction).

55. —— S.W.3d ——, ——, 2004 WL 422594, *6 (2004) (citations omitted).

56. *Id.* at ——, 2004 WL 422594, at *7 (quoting *Eastern Enters. v. Apfel*, 524 U.S. 498, 541, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998)).

57. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

58. *Sheffield*, —— S.W.3d at —— – ——, 2004 WL 422594, at *6–7.

59. 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

compensable taking under the Fifth Amendment, they likewise constituted a compensable taking under the Texas Constitution. Although, as we observed in *Sheffield*, "it could be argued that the differences in the wording of the two [constitutional] provisions are significant," [60] since neither party makes that argument here, we assume that the application of both provisions is identical in these circumstances.[61] We therefore consider only whether the *Nollan/Dolan* standard applies in the circumstances of this case, and if so, whether by that standard a compensable taking occurred.

The Town argues that the *Nollan/Dolan* standard does not apply unless the government exacts a dedication of a property interest or imposes conditions on development on an ad hoc basis. We begin by summarizing *Nollan* and *Dolan*, as we understand them, and then consider the Town's arguments.

### A

The Nollans owned a beachfront lot bordering on the Pacific Ocean.[62] There were a number of other such lots along the coast, and a little over a quarter mile away in both directions was a public beach. A seawall separated the beach portion of the property from the rest of the lot. The Nollans applied to the California Coastal Commission for a permit that would allow them to demolish a small bungalow on their lot and replace it with a three-bed-room home characteristic of the neighborhood. The Commission granted the permit subject to the Nollans' creation of an easement allowing public access to the area between the ocean and the seawall. The Commission reasoned that—

> the new house would increase blockage of the view of the ocean, thus contributing to the development of "a 'wall' of residential structures" that would prevent the public "psychologically ... from realizing a stretch of coastline exists nearby that they have every right to visit." The new house would also increase private use of the shorefront. These effects of construction of the house, along with other area development, would cumulatively "burden the public's ability to traverse to and along the shorefront." [63]

The Commission had imposed the same requirement on every other similarly situated lot in the area—43 of them—since obtaining the authority to do so.[64]

The Supreme Court held that the requirement imposed by the Commission constituted a taking, reasoning as follows. "[L]and-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests'".[65] Assuming, as the Commission argued, that it had legitimate interests in "protecting the public's ability to see the beach, assisting the public in overcoming the 'psychological barrier' to using the beach created by a developed

---

**60.** *Sheffield*, —— S.W.3d at ——, 2004 WL 422594, at *6.

**61.** *See also id.* at ——, 2004 WL 422594, at *6; *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 238–239 (Tex.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 392, 154 L.Ed.2d 295 (2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932 (Tex.1998), *cert. denied* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

**62.** *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 827–829, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

**63.** *Id.* at 828–829, 107 S.Ct. 3141 (citations omitted) (alteration in original).

**64.** *Id.* at 829, 107 S.Ct. 3141.

**65.** *Id.* at 834, 107 S.Ct. 3141 (alteration in original) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)).

shorefront, and preventing congestion on the public beaches",[66] regulation that substantially advanced those interests would not be a taking unless it "drastically" interfered with the Nollans' use of their property.[67] This would be true whether the regulatory action was the refusal to issue a permit or the issuance of a conditional permit. "[A] permit condition that serves the same legitimate police-power purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking."[68] But in either instance, "substantial advancement" requires an "essential nexus" between the restriction and the interests to be served.[69] "[U]nless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but 'an out-and-out plan of extortion.'"[70] The Commission could not explain how requiring the Nollans to allow the public access to the *back* of their property would help people in *front* to see past the Nollans' bigger home to the beach beyond, or how allowing more access to the beach would reduce congestion.[71] The public, who according to the Commission could not be expected to see the beach from the street in front of the Nollans' property, would not even know there was something there to have access *to.* Perhaps in view of this logical problem with its position, or perhaps in the spirit of candor, the Commission also stated that it believed "that the public interest will be served by a continuous strip of publicly accessible beach along the coast."[72] "The Commission may well be right that it is a good idea," the Supreme Court concluded, "but if it wants an easement across the Nollans' property, it must pay for it."[73]

Having found that the exaction imposed by the Commission was simply unrelated to the public interests it claimed to be advancing, the Supreme Court in *Nollan* did not consider the degree of connection required between an exaction that *did* advance public interests and the projected impact of the development for there not to be a taking. This half of the analysis the Supreme Court supplied in *Dolan v. City of Tigard.*[74]

Dolan applied to the City of Tigard for a permit allowing her to expand her plumbing and electric supply store and pave the parking lot.[75] In accordance with its Community Development Code, adopted as required by state statute,[76] the City conditioned its approval of the improvements on Dolan's dedication of a portion of her property in the flood plain for use as a public greenway, and another portion for use as a bicycle and pedestrian path. The City explained that the greenway was necessary to help control the anticipated additional storm water runoff due to the impervious surface of the new parking lot, and the bike path was necessary to help alleviate traffic congestion. Dolan requested a variance from the Code requirements, which the City refused.

---

**66.** *Id.* at 835, 107 S.Ct. 3141.

**67.** *Id.* at 835–836, 107 S.Ct. 3141 (citing *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

**68.** *Id.* at 836, 107 S.Ct. 3141.

**69.** *Id.* at 837, 107 S.Ct. 3141.

**70.** *Id.* (citation omitted).

**71.** *Id.* at 838–840, 107 S.Ct. 3141.

**72.** *Id.* at 841, 107 S.Ct. 3141.

**73.** *Id.* at 841–842, 107 S.Ct. 3141.

**74.** 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

**75.** *Id.* at 379, 114 S.Ct. 2309.

**76.** *Id.* at 377, 114 S.Ct. 2309.

Dolan did not "quarrel with the city's authority to exact some forms of dedication as a condition for the grant of a building permit, but challenge[d] the showing made by the city to justify [the] exactions" it imposed.[77] To determine whether the exactions constituted a taking, the Supreme Court first looked to see "whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city" as required by *Nollan*.[78] The Court explained that in *Nollan*,

[t]he absence of a nexus left the Coastal Commission in the position of simply trying to obtain an easement through gimmickry, which converted a valid regulation of land use into " 'an out-and-out plan of extortion.' "

No such gimmicks are associated with the permit conditions imposed by the city in this case.[79]

The connections between a greenway dedication and flood control, and between a bicycle path and traffic control, were "obvious".[80]

The harder part of the takings analysis in *Dolan* was "whether the degree of the exactions demanded by the city's permit conditions [bore] the required relationship to the projected impact of petitioner's proposed development."[81] To determine what relationship the Fifth Amendment requires, the Court looked to "representative" state court takings decisions, "[s]ince state courts have been dealing with this question a good deal longer than we have".[82]

In some States, very generalized statements as to the necessary connection between the required dedication and the proposed development seem to suffice. We think this standard is too lax to adequately protect petitioner's right to just compensation if her property is taken for a public purpose.

Other state courts require a very exacting correspondence, described as the "specifi[c] and uniquely attributable" test.... We do not think the Federal Constitution requires such exacting scrutiny, given the nature of the interests involved.

A number of state courts have taken an intermediate position, requiring the municipality to show a "reasonable relationship" between the required dedication and the impact of the proposed development.

\*     \*     \*

We think the "reasonable relationship" test adopted by a majority of the state courts is closer to the federal constitutional norm than either of those previously discussed. But we do not adopt it as such, partly because the term "reasonable relationship" seems confusingly similar to the term "rational basis" which describes the minimal level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment. We think a term such as "rough proportionality" best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.[83]

---

77. *Id.* at 386, 114 S.Ct. 2309.

78. *Id.*

79. *Id.* at 387, 114 S.Ct. 2309 (citation omitted).

80. *Id.* at 387–338, 114 S.Ct. 2309.

81. *Id.* at 388, 114 S.Ct. 2309.

82. *Id.* at 389, 114 S.Ct. 2309.

83. *Id.* at 389–391, 114 S.Ct. 2309 (alteration in original) (footnotes and citations omitted).

The Supreme Court counted Texas among the majority of states in the intermediate position,[84] citing our 1984 decision in *City of College Station v. Turtle Rock Corp.*[85]

The conditions imposed on Dolan's development of her property did not meet this "rough proportionality" test. The City had required Dolan to dedicate a *public* greenway, thereby requiring her to surrender the right to exclude others from part of her property, " 'one of the most essential sticks in the bundle of rights that are commonly characterized as property' ",[86] but had "never said why a public greenway, as opposed to a private one, was required in the interest of flood control."[87] The Supreme Court concluded:

> It is difficult to see why recreational visitors trampling along petitioner's floodplain easement are sufficiently related to the city's legitimate interest in reducing flooding problems ... and the city has not attempted to make any individualized determination to support this part of its request.[88]

With respect to the bike path, the Supreme Court concluded that the City's justifications for the requirement were "conclusory":[89]

> on the record before us, the city has not met its burden of demonstrating that the additional number of vehicle and bicycle trips generated by petitioner's development reasonably relate to the city's requirement for a dedication of the pedestrian/bicycle pathway easement. The city simply found that the creation of the pathway "could offset some of the traffic demand ... and lessen the increase in traffic congestion."[90]

Each of the City's exactions was too severe, given the projected impact of Dolan's development on the City's legitimate interests. In sum:

> The city's goals of reducing flooding hazards and traffic congestion, and providing for public greenways, are laudable, but there are outer limits to how this may be done. "A strong public desire to improve the public condition [will not] warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."[91]

■ We restate the rule of *Nollan* and *Dolan* generally as follows: conditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development.

**B**

The Town argues that for several reasons the *Nollan/Dolan* rule should not apply unless the exaction imposed is the dedication of a property interest, as happened in both those cases. The Nollans were required to dedicate a public easement across their property, and Dolan was required to dedicate a public greenway and bicycle path.

---

84. *Id.* at 391, 114 S.Ct. 2309.

85. 680 S.W.2d 802, 807 (Tex.1984).

86. *Dolan,* 512 U.S. at 393, 114 S.Ct. 2309 (citation omitted).

87. *Id.*

88. *Id.*

89. *Id.* at 395–396, 114 S.Ct. 2309.

90. *Id.* at 395, 114 S.Ct. 2309 (footnote omitted) (ellipses in original).

91. *Id.* at 396, 114 S.Ct. 2309 (quoting *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 43 S.Ct. 158, 67 L.Ed. 322 (1922)).

First, the Town argues that the Supreme Court would not itself apply the rule of *Nollan* and *Dolan* outside the context of possessory dedications. The Town points to language in *Dolan* where, in distinguishing between "land use planning [that] has been sustained against constitutional challenge" [92] and the City of Tigard's actions, the Court observed that "the conditions imposed [on Dolan] were not simply a limitation on the use [she] might make of her own parcel, but a requirement that she deed portions of the property to the city." [93] In drawing this distinction between *Dolan* and use-restriction cases, the Supreme Court did not, we think, intend to suggest that all regulatory takings cases must fall into one category or the other. The requirement that a developer improve an abutting street at its own expense is in no sense a use restriction; it is much closer to a required dedication of property—that being the money to pay for the required improvement. We do not read *Dolan* even to hint that exactions should be analyzed differently than dedications in determining whether there has been a taking.

The Town also cites the Supreme Court's discussion of the applicability of *Dolan* in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.* [94] In that case, Del Monte Dunes applied to the City of Monterey for permission to develop 37.6 acres of oceanfront property for residential purposes. "After five years, five formal decisions [by the City], and 19 different site plans, Del Monte Dunes decided the city would not permit development of the property under any circumstances." [95] Del Monte Dunes sued, alleging in part that the City's actions constituted a regulatory taking.[96] Although the City had required that parts of the property be dedicated to public use,[97] Del Monte Dunes did not complain of these requirements but challenged the City's denial of any development at all. The court of appeals had stated that the City's denial of development was required to be "roughly proportional" to its legitimate interests, borrowing from the second prong of the *Dolan* test,[98] and while the statement was immaterial to the court of appeals' decision,[99] the Supreme Court took pains to disavow it:

Although in a general sense concerns for proportionality animate the Takings Clause, see *Armstrong v. United States*, 364 U.S. 40, 49 [80 S.Ct. 1563, 4 L.Ed.2d 1554] (1960) ("The Fifth Amendment's guarantee ... was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole"), we have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use. See *Dolan, supra*, at 385, 512 U.S. 374, 114 S.Ct. 2309; *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 841 [107 S.Ct. 3141, 97 L.Ed.2d 677] (1987). The rule applied in *Dolan* considers whether dedications demanded as conditions of development are proportional to the development's anticipated impacts. It was

---

92. *Id.* at 384, 114 S.Ct. 2309.

93. *Id.* at 385, 114 S.Ct. 2309.

94. 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

95. *Id.* at 698, 119 S.Ct. 1624 (citations omitted).

96. *Id.*

97. *Id.* at 696–697, 119 S.Ct. 1624.

98. *Id.* at 702, 119 S.Ct. 1624.

99. *Id.* at 703, 119 S.Ct. 1624.

not designed to address, and is not readily applicable to, the much different questions arising where, as here, the landowner's challenge is based not on excessive exactions but on denial of development. We believe, accordingly, that the rough-proportionality test of *Dolan* is inapposite to a case such as this one.[100]

The Town argues that this passage clearly shows the Supreme Court's intent to limit the *Nollan/Dolan* rule to dedication cases, but we do not read it that way. The passage does no more than elaborate on the same distinction drawn in *Dolan* between conditions limiting the use of property and those requiring a dedication of property. In neither *Dolan* nor *Del Monte Dunes* did the Supreme Court have reason to differentiate between dedicatory and non-dedicatory exactions. Nor does either case suggest that conditioning development of property on improvements to abutting roadways is somehow more like a restriction on the use of the property rather than a dedication of property.[101]

The Town argues that *Dolan* expressly claims for its basis—

the well-settled doctrine of "unconstitutional conditions," [by which] the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property.[102]

This doctrine, the Town contends, cannot be used to find a taking when the thing given up in exchange for a discretionary benefit is simply money, for which the owner has no constitutional right of recompense. Assuming that the doctrine of unconstitutional conditions is limited as the Town argues, a position on which we express no opinion, the Town's argument does not limit the application of *Dolan* because the doctrine was not the only foundation on which it rested and was not even mentioned in *Nollan*. *Nollan* was grounded entirely in the Supreme Court's takings jurisprudence. Thus, even if the doctrine would not apply to a non-dedicatory exaction, as the Town argues, the rule of *Dolan* is not thereby made inapplicable.

The Town asserts that most courts have refused to apply the *Dolan* rule to non-dedicatory takings. Whether the Town is correct with respect to all courts of record we cannot tell for sure, but the Town does not appear to be correct about courts of last resort. The Supreme Court of Arizona did not apply *Dolan* in determining the validity of water resource fees charged to all new developments to help defray the city's expense of acquiring new sources of water,[103] and the Supreme Court of Colo-

---

**100.** *Id.* at 702–703, 119 S.Ct. 1624.

**101.** *See also Lambert v. City and County of San Francisco*, 529 U.S. 1045, 1047–1049, 120 S.Ct. 1549, 146 L.Ed.2d 360 (2000) (Scalia, J., joined by Kennedy and Thomas, JJ., dissenting from the denial of certiorari) (involving the denial of a permit to convert residential hotel rooms to tourist rooms because of the owner's failure to pay $600,000 to replace the residential rooms, and stating that "[w]hen there is uncontested evidence of a demand for *money or other property*—and still assuming that denial of a permit because of failure to meet such a demand constitutes a taking—it should be up to the permitting authority to establish *either* (1) that the demand met the requirements of *Nollan* and *Dolan*, or (2) that denial would have ensued even if the demand had been met") (emphasis added), *opinion below reported at* 67 Cal.Rptr.2d 562, 568–569 (Cal.Ct.App.1997).

**102.** *Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

**103.** *Home Builders Ass'n v. City of Scottsdale*, 187 Ariz. 479, 930 P.2d 993, 1000, *cert. denied*, 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997).

rado likewise refused to apply *Dolan* in a similar context involving plant impact fees charged to improve water quality in the community.[104] The Supreme Court of South Carolina did not apply *Dolan* in analyzing whether the application of zoning ordinances to the rebuilding of a private pier constituted a taking,[105] and stated in dicta that *Dolan* applied only to physical exactions.[106] But the Supreme Court of Illinois[107] and the Supreme Court of Ohio[108] have applied *Dolan* in assessing the validity of fees charged for the impact of new developments on traffic, and the Supreme Court of Washington cited *Dolan* in upholding the validity, under a state statute, of fees paid under an ordinance conditioning development approval on payment of a fee in lieu of providing open space.[109] Most importantly, the Supreme Court of California in *Ehrlich v. City of Culver City*, a case very similar to the one before us, expressly rejected limiting the *Dolan* rule to property dedications.[110] Ehrlich, having found it impossible to operate his private sports facility at a profit, applied for a zoning change from recreational use to allow the facility to be replaced by condominiums.[111] The city conditioned approval on payment of $280,000 in lieu of construction of four public tennis courts.[112] The court concluded that this was the context in which *Dolan* "quintessentially" applied[113] and held that imposition of the charge was a taking.[114] Although the court splintered on various issues, it was unanimous on the application of *Dolan*.[115]

**104.** *Krupp v. Breckenridge Sanitation Dist.,* 19 P.3d 687, 696–698 (Colo.2001).

**105.** *Sea Cabins on the Ocean IV Homeowners Ass'n, Inc. v. City of North Myrtle Beach,* 345 S.C. 418, 548 S.E.2d 595, 603–604 (2001).

**106.** *Id.* at 603 n. 5.

**107.** *Northern Ill. Home Builders Ass'n v. County of DuPage,* 165 Ill.2d 25, 208 Ill.Dec. 328, 649 N.E.2d 384, 388–389 (1995).

**108.** *Home Builders Ass'n v. City of Beavercreek,* 89 Ohio St.3d 121, 729 N.E.2d 349, 354–356 (2000).

**109.** *Trimen Dev. Co. v. King County,* 124 Wash.2d 261, 877 P.2d 187, 189–190 (1994) (county's park development fees were lawful under statute if the fees were imposed pursuant to a voluntary agreement, and were reasonably necessary as a direct result of the proposed development or required to mitigate the direct impact of the development").

**110.** *Ehrlich v. City of Culver City,* 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 911 P.2d 429, 438–439, *cert. denied,* 519 U.S. 929, 117 S.Ct. 299, 136 L.Ed.2d 218 (1996).

**111.** *Id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 433–434.

**112.** *Id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 434–435.

**113.** *Id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 438.

**114.** *Id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 433; *accord San Remo Hotel v. City and County of San Francisco,* 27 Cal.4th 643, 117 Cal. Rptr.2d 269, 41 P.3d 87, 102–103 (2002).

**115.** *Ehrlich,* 50 Cal.Rptr.2d 242, 911 P.2d at 432 (plurality op. by Arabian, J., joined by Lucas, C.J., and George, J.); *id.,* 50 Cal. Rptr.2d 242, 911 P.2d at 451 (Mosk, J., concurring) (*Dolan* "is generally *not* applicable to development fees; the present case is thus more the exception than the rule"); *id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 462 (Kennard, J., concurring and dissenting, joined by Baxter, J., in concurring), ("I agree with the majority that *Nollan–Dolan*'s 'essential nexus' and 'rough proportionality' requirements apply to monetary exactions that, like the mitigation fee involved here, are imposed on a specific parcel of property as a condition of obtaining a development permit"); *id.,* 50 Cal.Rptr.2d 242, 911 P.2d at 468 (Werdegar, J., concurring and dissenting); *see San Remo Hotel,* 117 Cal.Rptr.2d 269, 41 P.3d at 102 ("Though the members of this court disagreed on various parts of the analysis [in *Ehrlich* ], we unanimously held that this ad hoc monetary exaction *was* subject to *Nollan/Dolan* scrutiny.").

The procedural history of *Ehrlich* is worth noting. The California Court of Appeal originally held, before *Dolan* was decided, that there had been no taking, and on petition for certiorari, after *Dolan* issued, the United States Supreme Court vacated the court of appeal's judgment and remanded the case to that court for reconsideration in light of *Dolan*.[116] On remand, the court of appeal reached the same conclusion it had before, but the Supreme Court of California reversed, holding on the basis of *Dolan* that there had been a taking.[117] This time the United States Supreme Court denied certiorari.[118]

The Town argues that a non-dedicatory exaction like a fee or charge is not the kind of possessory intrusion that has historically been specially protected by constitutional takings provisions, and that if such an exaction is a taking at all, it can only be because it is unreasonable as determined by the kinds of factors identified by the Supreme Court in *Penn Central Transportation Co. v. City of New York*[119] and by this Court in *Sheffield*.[120] But *Nollan* and *Dolan* themselves depart somewhat from the historic focus of takings protections on possessory intrusions. The issue is not, as the Town puts it, whether such departures should exist, but given that dedicatory exactions are to be examined more strictly than other kinds of land use regulations, whether non-dedicatory exactions must likewise be scrutinized.

The Town argues that no practical difference exists between approval on condition and denial for want of the condition, and if the former is going to be judged by the *Dolan* standard and the latter by the more lenient *Penn Central* factors, the government will choose simply to deny permission to develop at all, thereby hampering development even further than Stafford complains of here. One premise of the argument is undoubtedly true—there is no practical difference between the two government actions. But the other is not. When the practical effect is exaction, conditional approval and denial are both measured by the *Dolan* taking standard. As the Supreme Court explained in *Nollan*:

> The Commission argues that a permit condition that serves the same legitimate police-power purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking. We agree. Thus, if the Commission attached to the permit some condition that would have protected the public's ability to see the beach notwithstanding construction of the new house—for example, a height limitation, a width restriction, or a ban on fences—so long as the Commission could have exercised its police power (as we have assumed it could) to forbid construction of the house altogether, imposition of the condition would also be constitutional. Moreover (and here we come closer to the facts of the present case), the condition would be constitutional even if it consisted of the requirement that the Nollans provide a viewing spot on their property for passersby with whose sighting of the ocean their new house would interfere. Although such a requirement, constituting a permanent grant of continuous access to the property, would have to be consid-

116. 512 U.S. 1231, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994) (vacating and remanding *Ehrlich v. City of Culver City*, 15 Cal.App.4th 1737, 19 Cal.Rptr.2d 468 (1993)).

117. 50 Cal.Rptr.2d 242, 911 P.2d at 433.

118. 519 U.S. 929, 117 S.Ct. 299, 136 L.Ed.2d 218 (1996).

119. 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

120. —— S.W.3d ——, 2004 WL 422594 (2004).

ered a taking if it were not attached to a development permit, the Commission's assumed power to forbid construction of the house in order to protect the public's view of the beach must surely include the power to condition construction upon some concession by the owner, even a concession of property rights, that serves the same end. If a prohibition designed to accomplish that purpose would be a legitimate exercise of the police power rather than a taking, it would be strange to conclude that providing the owner an alternative to that prohibition which accomplishes the same purpose is not.[121]

The government cannot sidestep constitutional protections merely by rephrasing its decision from "only if" to "not unless". The constitutional guaranty against uncompensated takings is "more than a pleading requirement, and compliance with it [is] more than an exercise in cleverness and imagination." [122]

The Town argues that if non-dedicatory exactions are subject to the *Dolan* standard, "Texas cities will be forced to run a fierce constitutional gauntlet that will significantly erode the practical ability of cities to regulate land development to promote the public interest and protect community rights." But we are unable to see any reason why limiting a government exaction from a developer to something roughly proportional to the impact of the development—in other words, prohibiting " 'an out-and-out plan of extortion' " [123]—will bring down the government. Pressed to defend this assertion at oral argument, counsel for the Town argued that the real problem with the "rough proportionality" standard is not

the standard itself; after all, the government can hardly argue that it is entitled to exact more from developers than is reasonably due to the impact of development. The real problem, the Town argues, is that the validity of an exaction in an individual case is not presumed but must be shown by the government. We are unable to see why this burden is unduly onerous. Rather, we think the burden is essential to protect against the government's unfairly leveraging its police power over land-use regulation to extract from landowners concessions and benefits to which it is not entitled. To repeat *Dolan:* "No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." [124]

Finally, the Town argues that if the *Dolan* standard applies to non-dedicatory exactions, then it must "apply to *all* development requirements, including that houses be built of brick rather than of wood, and of a certain size on a certain sized lot, since these are all conditions placed on the ability to develop land." Clearly, the cited examples of routine regulatory requirements do not come close to the exaction imposed by the Town in this case. There may be other requirements that do. Determining when a regulation becomes a taking has not lent itself to bright line-drawing. But we are satisfied that the distinction between exactions and other types of regulatory requirements is meaningful and necessary.

■ We agree with the Supreme Court of California's decision in *Ehrlich.* For

---

121. *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 836–837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

122. *Id.* at 841, 107 S.Ct. 3141.

123. *Id.* at 837, 107 S.Ct. 3141 (citation omitted).

124. *Dolan v. City of Tigard,* 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

purposes of determining whether an exaction as a condition of government approval of development is a compensable taking, we see no important distinction between a dedication of property to the public and a requirement that property already owned by the public be improved. The *Dolan* standard should apply to both.

## C

The Town also argues that the *Nollan/Dolan* rule should not apply unless an exaction is imposed on an ad hoc, individualized basis. Like its argument that the rule should not apply to non-dedicatory exactions, this argument, too, is based on a distinction drawn in *Dolan* itself between "land use planning [that] has been sustained against constitutional challenge" [125] and the City of Tigard's actions. The former, the Supreme Court explained, "involved essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel." [126] In *Nollan* the Court had stated:

> our cases describe the condition for abridgement of property rights through the police power as a "*substantial* ad-

vanc[ing]" of a legitimate state interest. We are inclined to be particularly careful about the adjective where the actual conveyance of property is made a condition to the lifting of a land-use restriction, since in that context there is heightened risk that the purpose is avoidance of the compensation requirement, rather than the stated police-power objective. [127]

The Town argues that most courts have limited the *Dolan* standard to such "adjudicative" decisions, and as far as we can tell, all courts of last resort to address the issue have done so. [128] The Supreme Court of California in *San Remo Hotel v. City and County of San Francisco* has provided the only justification for the limitation—political reality:

> While legislatively mandated fees do present some danger of improper leveraging, such generally applicable legislation is subject to the ordinary restraints of the democratic political process. A city council that charged extortionate fees for all property development, unjustifiable by mitigation needs, would likely face widespread and well-financed opposition at the next election. Ad hoc individual monetary exactions deserve

**125.** *Id.* at 384, 114 S.Ct. 2309.

**126.** *Id.* at 385, 114 S.Ct. 2309.

**127.** *Nollan,* 483 U.S. at 841, 107 S.Ct. 3141.

**128.** *See Home Builders Ass'n v. City of Scottsdale,* 187 Ariz. 479, 930 P.2d 993, 1000, *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997); *Ehrlich v. City of Culver City,* 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 911 P.2d 429, 439 (1996), *cert. denied* 519 U.S. 929, 117 S.Ct. 299, 136 L.Ed.2d 218 (1996); *San Remo Hotel v. City and County of San Francisco,* 27 Cal.4th 643, 117 Cal.Rptr.2d 269, 41 P.3d 87, 105 (2002); *Krupp v. Breckenridge Sanitation Dist.,* 19 P.3d 687, 695 (Colo.2001) ("Application of the *Nollan/Dolan* test has been limited to the narrow set of

cases where a permitting authority, through a specific, discretionary adjudicative determination, conditions continued development on the exaction of private property for public use."); *Parking Ass'n of Ga., Inc. v. City of Atlanta,* 264 Ga. 764, 450 S.E.2d 200, 203 n. 3 (1994) (*Dolan* test did not apply to city's legislative determination), *cert. denied,* 515 U.S. 1116, 1117–1118, 115 S.Ct. 2268, 132 L.Ed.2d 273 (1995) (Thomas, J., joined by O'Connor, J., dissenting from the denial of certiorari, noting conflict in lower courts on whether test from *Dolan* or *Agins* applied when a taking is alleged based on a legislative act); *Southeast Cass Water Res. Dist. v. Burlington Northern R. Co.,* 527 N.W.2d 884, 896 (N.D.1995) (stating that *Nollan* and *Dolan* do not "change the constitutional analysis for legislated police-power regulation").

special judicial scrutiny mainly because, affecting fewer citizens and evading systematic assessment, they are more likely to escape such political controls.[129]

We are not convinced. While we recognize that an ad hoc decision is more likely to constitute a taking than general legislation, we think it entirely possible that the government could "gang up" on particular groups to force extractions that a majority of constituents would not only tolerate but applaud, so long as burdens they would otherwise bear were shifted to others.

Nor are we convinced that a workable distinction can always be drawn between actions denominated adjudicative and legislative. Of course, when the government singles out a landowner by imposing essentially unprecedented conditions on its application to develop property, the distinction is clear. But that is not what happened in either *Dolan* or *Nollan*. The conditions on Dolan's enlargement of her store were all imposed pursuant to specific provisions of the City of Tigard's Community Development Code that was itself adopted pursuant to state law.[130] The condition on the Nollans' development had been imposed on every other similarly situated lot in the neighborhood after the California Coastal Commission acquired the authority to do so.[131] The Supreme Court observed in *Nollan*:

> If the Nollans were being singled out to bear the burden of California's attempt to remedy these problems [claimed by the Commission to warrant the exaction imposed], although they had not contributed to it more than other coastal landowners, the State's action, even if otherwise valid, might violate

either the incorporated Takings Clause or the Equal Protection Clause. One of the principal purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." But that is not the basis of the Nollans' challenge here.[132]

Although the exactions in *Nollan* and *Dolan* were imposed taking into account individual circumstances, they were by no means unique or exceptional in the community.

We think that the Town's argument, and the few courts that have accepted it, make too much of the Supreme Court's distinction in *Dolan*. By the same token, we need not risk error in the opposite direction by undertaking to decide here in the abstract whether the *Dolan* standard should apply to all "legislative" exactions—whatever that really means—imposed as a condition of development. It is enough to say that we can find no meaningful distinction between the condition imposed on Stafford and the conditions imposed on Dolan and the Nollans. All were based on general authority taking into account individual circumstances. Dolan's request for a variance was denied.[133] The Town was authorized to grant, and did grant, exceptions to the general requirement that roads abutting subdivisions be improved to specified standards. Stafford applied for an exception and was refused, but the Town nevertheless considered whether an exception was appropriate.

The Town argues that if the government is to be held to the stricter *Dolan* standard

**129.** *San Remo Hotel,* 117 Cal.Rptr.2d 269, 41 P.3d at 105.

**130.** *Dolan,* 512 U.S. at 377–379, 114 S.Ct. 2309.

**131.** *Nollan,* 483 U.S. at 829, 107 S.Ct. 3141.

**132.** *Id.* at 835 n. 4, 107 S.Ct. 3141 (citations omitted).

**133.** *Dolan,* 512 U.S. at 380–381, 114 S.Ct. 2309.

because it tries to tailor general requirements to individual circumstances—that is, because it sometimes grants variances—it will be less inclined to do so, thereby inflicting one-size-fits-all shoes onto very different feet. But it is precisely for this reason that we decline to adopt a bright-line adjudicative/legislative distinction. The touchstone of the constitutional takings protections is that a few not be forced, in the words just quoted, " 'to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Thus, while we need not and do not decide what "legislative" decisions are to be judged by the *Dolan* standard, we conclude that the condition that the Town imposed on Stafford must be.

**D**

Application of the *Nollan/Dolan* standard in the circumstances of the present case is certainly consistent with, if not required by, well-established Texas law. More than a century ago, in *Hutcheson v. Storrie*,[134] we considered the extent to which the government could require landowners to pay the cost of paving adjacent streets. Quoting the United States Supreme Court's decision in *Village of Norwood v. Baker*,[135] we said:

> "In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess*, a taking under the guise of taxation of

private property for public use without compensation."[136]

More recently, we reiterated:

> An assessment against property and its owner for paving improvements on any basis other than for benefits conferred and in an amount materially greater than the benefits conferred violates Section 17 of Article 1 of the Constitution of Texas, which prohibits the taking of private property for public use without just compensation.[137]

Thus, in the context of paving assessments, we have considered non-dedicatory exactions—that is, the payment of costs of street improvements—that are "materially greater" than the special benefits of such improvements to landowners to be a compensable taking under the Texas Constitution.

Further, as noted by the United States Supreme Court in *Dolan,* this Court adopted something like the *Nollan/Dolan* standard in *City of College Station v. Turtle Rock Corp.*[138] and applied it to a non-dedicatory exaction based on a general ordinance, a situation not unlike the present case. College Station's ordinance required developers either to dedicate land for park purposes or contribute to a special fund to be used for neighborhood parks.[139] Turtle Rock paid the fund $34,200 to obtain approval of its development plan. To determine whether this exaction constituted a taking:

> Both need and benefit must be considered. Without a determination of need, a city could exact land or money to provide a park that was needed long

**134.** 92 Tex. 685, 51 S.W. 848 (Tex.1899).

**135.** 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898).

**136.** 51 S.W. at 850 (quoting *Norwood,* 172 U.S. at 279, 19 S.Ct. 187) (emphasis in *Norwood* ).

**137.** *Haynes v. City of Abilene,* 659 S.W.2d 638, 641 (Tex.1983) (citations omitted).

**138.** 680 S.W.2d 802 (Tex.1984).

**139.** *Id.* at 803–804.

before the developer subdivided his land. Similarly, unless the court considers the benefit, a city could, with monetary exactions, place a park so far from the particular subdivision that the residents received no benefit. . . .

This type of "reasonable connection" analysis will ensure that the subdivision receives relief from a perceived need, and it will effectively constrain the reach of the municipality. It is consistent with the kind of "reasonableness" analysis required by [*DuPuy v. City of Waco,* 396 S.W.2d 103, 107 (Tex.1965), and *City of Austin v. Teague,* 570 S.W.2d 389, 391 (Tex.1978) ] and the presumption of validity is consistent with the approach that Texas courts have traditionally taken when considering the constitutionality of municipal land use ordinances. We also note that this type of analysis has been commonly used in other jurisdictions examining the validity of park land dedication ordinances.[140]

■ We agree with the United States Supreme Court's refinement of this "reasonable connection" analysis to *Dolan's* two-part "essential nexus"/"rough proportionality" test. Local government is constantly aware of the exactions imposed on various landowners for various kinds of developments. It is also aware of the impact of such developments on the community over time. For these reasons, we agree with the Supreme Court that the burden should be on the government to "make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." [141]

## IV

Having concluded that the *Nollan/Dolan* standard applies to the exaction imposed on Stafford, we now consider whether, under that standard, the exaction was a compensable taking.

By the first part of the standard, the condition the Town imposed on the development of Stafford Estates must have had an essential nexus to the substantial advancement of some legitimate government interest. We agree with the court of appeals that the "safety on, and durability of, Simmons Road"[142] are legitimate interests, as the Town asserted, and that those interests were substantially advanced by many of the improvements to Simmons Road that the Town required Stafford to make— in the court of appeals' words, "shoulders on roads, better sight distances, safer driver access points, and the capacity for better traffic flow".[143] "Indeed," the court of appeals noted, "Stafford does not contend these improvements would not increase public safety, but only complains that they should have been asphalt rather than concrete."[144] The Town argues that the first part of the *Dolan* standard should not be applied to the concrete requirement separate and apart from the road reconstruction as a whole, and we agree.

■ The court of appeals went on to conclude that an essential nexus also existed between the Town's interests and its specific requirement that Simmons Road be demolished and repaved with concrete because that requirement did not "utterly fail" to advance the Town's interests. The court appears to have reasoned that because a requirement that utterly fails to advance legitimate government interests is

**140.** *Id.* at 807.

**141.** *Dolan v. City of Tigard,* 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

**142.** 71 S.W.3d 18, 39.

**143.** *Id.* at 40.

**144.** *Id.*

a taking, as was the case in *Nollan*, a requirement that does not utterly fail to advance such interests is not a taking. Apart from the obvious logical flaw in this reasoning, it has the perverse effect of equating "substantially advance" with "does not utterly fail to advance". We do not agree that the "essential nexus" part of the *Dolan* standard can be met merely by showing that a condition does not utterly fail to advance legitimate government interests.

■ By the second part of the standard, the Town was required to make an individualized determination that the required improvements to Simmons Road were roughly proportional to the projected impact of the Stafford Estates development. Stafford argues that the Town was required to make this determination before imposing the condition on development, but we agree with the court of appeals that while the determination usually *should* be made before a condition is imposed, *Dolan* does not preclude the government from making the determination after the fact.[145]

■ The Town does not contend that the improvements it required Stafford to make in Simmons Road are roughly proportional to the impact of the development on that road. The road was in good shape at the time, and Stafford showed that the development would increase traffic only about 18%. Stafford concedes that some improvements were necessary, but not rebuilding the road. But the Town argues that the impact of the development on all of the Town's roadways must be taken into account. We agree that the Town can take the development's full impact into account and is not limited to considering the impact on Simmons Road. But in so doing, the Town is nonetheless required to measure that impact in a meaningful,

though not precisely mathematical, way, and must show how the impact, thus measured, is roughly proportional in nature and extent to the required improvements.

The Town has attempted to measure the impact of the Stafford Estates development on the Town's roadways by reference to the traffic impact fees it charges developers to be used in making capital improvements to its roadway system. The Town argues that the fees actually paid do not reflect the impact of development on traffic, as one might think. Rather, the Town asserts, the discount in the fees required by ordinance based on the nature of the development shows the real impact of a development on the roadway system. The Town has offered no evidence to support this assertion. In the abstract—and the abstract is all the Town has provided—it is just as likely that the discounts are not giveaways to developers but are themselves an admission by the Town that a particular development's· impact on the roadways included in the Town's capital improvements plan is actually less than the total cost of those improvements apportioned to all new developments. In other words, the Town's discount of impact fees just as likely reflects the reality that some improvements ought, "in all fairness and justice, [to] be borne by the public as a whole."[146] As the court of appeals concluded, the Town has failed to relate discounted traffic impact fees to the impact of developments on traffic.

The Town argues that requiring each developer to improve abutting roadways is roughly proportional to the impact of all developments on all roadways, and that "this system of reciprocal subdivision exactions meets the requirement of rough proportionality." Once again, the argument is

---

**145.** *Id.* at 40–41.

**146.** *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 835 n. 4, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

too abstract. It cannot be determined from the Town's mere assertion whether the requirement imposes a burden on developers that is more than, less than, or about the same as the impact of development. The argument that it is fair for everyone to "kick in a little something" cannot be assessed in the abstract.

Finally, the Town complains, the court of appeals improperly focused on the requirement that Simmons Road be rebuilt with concrete as being wholly unrelated to the impact of the Stafford Estates development. We do not agree. The court of appeals simply expressed concern that the requirement was well beyond any justification offered by the Town.

In sum, the Town has failed to show that the required improvements to Simmons Road bear any relationship to the impact of the Stafford Estates development on the road itself or on the Town's roadway system as a whole. On this record, conditioning development on rebuilding Simmons Road with concrete and making other changes was simply a way for the Town to extract from Stafford a benefit to which the Town was not entitled. The exaction the Town imposed was a taking for which Stafford is entitled to be compensated. Inasmuch as the Town does not challenge the court of appeals' damages analysis, its judgment must be affirmed.

### V

Finally, we must consider Stafford's argument that it is entitled to attorney fees and expert witness fees under the federal

Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (2003). Stafford sued under the Civil Rights Act of 1867 as amended, 42 U.S.C. § 1983 (2003), alleging a violation of his rights under the Takings Clause of the Fifth Amendment to the United States Constitution. Section 1988(c) authorizes recovery of expert witness fees in some federal civil rights actions but not in an action under section 1983.[147] Thus, Stafford is not entitled to recover expert witness fees. Section 1988(b) authorizes an award of attorney fees to the prevailing party in an action under 42 U.S.C. § 1983.[148] The court of appeals held in part that Stafford cannot recover attorney fees because it has not prevailed on its 1983 claim.[149] We agree.

■ The Fifth Amendment prohibits the taking of property without just compensation but does not require payment before the taking occurs.[150] As the United States Supreme Court has held:

> all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process "[yields] just compensation," then the property owner "has no claim against the Government" for a taking.... Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the

---

**147.** 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of [§§ 1981 or 1981a], the court, in its discretion, may include expert fees as part of the attorney's fee.").

**148.** *Id.* § 1988(b) (2003) ("In any action or proceeding to enforce a provision of ... [42 U.S.C. § 1983] ..., the court, in its discre-

tion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....").

**149.** 71 S.W.3d at 49.

**150.** *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

procedure and been denied just compensation.[151]

For a regulatory taking like Stafford claims, Texas provides an inverse condemnation action for violation of article I, section 17 of the Texas Constitution.[152] This is "an adequate procedure for seeking just compensation". Stafford has made use of the procedure and now obtained compensation. Consequently, Stafford "cannot claim a violation of the Just Compensation Clause" and therefore cannot prevail on its section 1983 action.

Amicus curiae, Pacific Legal Foundation, argues that this is tantamount to saying that state and federal takings claims cannot be brought in the same lawsuit, but it is not. The fact that the federal constitutional guaranty is not violated if state law affords just compensation does not preclude both claims from being asserted in the same action.[153] Recovery denied on the state takings claim may yet be granted on the federal claim, in the same action.

Stafford argues that it is entitled to attorney fees under section 1988 even if its federal claims are not reached because of the relief awarded on his state claim, as long as the claims arise out of a common nucleus of operative facts. Stafford would have a strong argument if its federal claims were simply "not reached".[154] But

because Stafford has obtained adequate compensation through state procedures, it has no federal claims to be reached. Stafford's rights under the United States Constitution simply were never violated.

\*     \*     \*

For these reasons, the judgment of the court of appeals is

*Affirmed.*

---

151. *Id.* at 194–95, 105 S.Ct. 3108 (alteration in original) (citations omitted).

152. *Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980); *City of Waco v. Roberts,* 121 Tex. 217, 48 S.W.2d 577, 579 (1932) (stating that a cause of action for violation of article I, section 17 of the Texas Constitution arises "under the Constitution itself"), *overruled on other grounds by City of Houston v. Renault, Inc.,* 431 S.W.2d 322 (Tex.1968).

153. *See Guetersloh v. State,* 930 S.W.2d 284 (Tex.App.-Austin 1996, writ denied), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

154. *See Southwestern Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 551 (5th Cir.2003) (" 'In *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the Supreme Court intimated that a party prevailing on a substantial claim that is pendent to a civil rights claim is entitled to a recovery of attorney's fees when the civil rights claim and the pendent claim arise out of a common nucleus of operative facts. This Circuit, along with other circuits, has followed the Supreme Court's direction.' ") (quoting *Williams v. Thomas,* 692 F.2d 1032, 1036 (5th Cir.1982), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983)).