GRIFFIN, J.,
dissenting.
The majority speaks as if this case is no more than the unremarkable application of settled “exaction” law from the United States Supreme Court. I disagree. There is very little of the law important to this case that is settled law, and if the outcome in this case is dictated by the law of exaction, then somebody needs to get it fixed.
In basic terms, this is what happened:
Mr. Koontz had a mostly wetland fourteen-acre piece of undeveloped land on which he wanted to put a commercial development. For this, he needed a permit from the St. Johns River Water Management District [“the District”]. He concedes he had no right to the permit, and he acknowledges that the government had *16 the right to turn him down flat but, following the time-honored legal principle that “there is no harm in asking,” [1] he submitted an application. This turned out to be a lucrative move, which, in light of this Court’s decision, will no doubt be widely-emulated all over the State of Florida. Elizabeth Johnson, a scientist employed by the District, told Mr. Koontz that the District would be willing to partly grant his request and allow either the development of one acre, preservation of the balance and no off-site mitigation or development of 3.7 acres, preservation of the balance and some off-site mitigation to enhance fifty acres of existing wetlands a few miles away by cleaning some culverts and ditches.[2] Mr. Koontz apparently thought this latter proposal was OK, except for the part about the culverts and ditches, and so he refused. In the absence of agreement, the permit was denied.
In 1994, Mr. Koontz filed an inverse condemnation lawsuit, claiming that, by imposing an unreasonable condition on the issuance of a permit — the off-site mitigation — the District had taken his property.
Mr. Koontz stipulated that he was not “proceeding upon a theory that the two District final orders deprived [him] of all or substantially all economically beneficial or productive use of the subject property.” Rather, in describing the issue to be litigated, he stated:
The issue before this Court is whether the conditions imposed by the District on the Koontz property and in particular, the required mitigation, resulted in a regulatory taking of Koontz property. The off-site mitigation did not serve a substantial purpose.
This theory was principally based on Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). However, during the twelve years this suit proceeded below, Mr. Koontz’ original theory of liability evaporated. In 2005, the United States Supreme Court issued its decision in Lingle v. Chevron, 544 U.S. 528, 532, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), which significantly revised and restated federal “takings” jurisprudence.
In its order determining liability, the trial court explained that it did not appear to the court that Mr. Koontz had a “taking” claim, but that it felt bound to find one by virtue of this Court’s 1998 opinion in Koontz I that a legally sufficient “taking” claim had been pled that was ripe for determination on the merits.[3] The trial *17 judge ultimately settled on the Nollan/Dolan “exaction theory.” He found as a matter of fact that the off-site mitigation condition met neither the Nollan/Dolan “nexus” or “rough proportionality” requirements and that, accordingly, the District had “taken” Mr. Koontz’ property. Mr. Koontz was awarded, as compensation for this “taking,” the sum of $376,154.00. This was calculated to be the rental value of the property based on a valuation with the permit of $477,000. The rental term was calculated to be from 1999, when the permit was denied, until the permit was issued in 2005.[4]
On appeal, the District does not contest the trial court’s determination that the off-site mitigation condition was an “exaction” under Nollan/Dolan, but the District does contend that there was no “taking.” I agree and would reverse this judgment.
It is clear after Nollan that the notion of “unconstitutional conditions” imposed by a government on the grant of a discretionary benefit, such as a permit, can cause a taking of property. Nollan, and later, Dolan, were occupied, however, with the problem of defining what sorts of conditions on the use or development of real property rose to the level of “unconstitutional.” The legal effect of a judicial determination that an agency has imposed an unconstitutional condition, which the Court dubbed an “exaction” is barely and only inferentially dealt with. Dolan was remanded to the state court to make an individualized determination whether the land dedication condition was related both in nature and extent to the impact of the proposed development. 512 U.S. at 391, 114 S.Ct. 2309
There are multiple basic questions about “exaction” law that have not yet been answered by the United States Supreme Court, and the limited number of cases decided by lower courts in light of Nollan and Dolan are not very helpful. In my opinion, the majority has chosen the wrong answers to several basic questions about “exactions.”
The first and most basic question posed by this case is whether the imposition of an unconstitutional condition on an agency’s issuance of a land use permit is necessarily a “taking” of the real property. There is little doubt after Nollan and Dolan that an unconstitutional condition that requires a landowner to give up any of its bundle of rights in the land is a “taking.” That was the kind of condition that was at issue in those two cases, and a fair reading of the various opinions in Nollan and Dolan suggests that all the Court had in mind was the agency’s acquisition of an interest in real property. In two later cases, Lingle and City of Monterey v. Del Monte Dunes, 526 U.S. 687, 702-03, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the Supreme Court indicated that application of Nollan and Dolan was limited to cases involving the dedication of private property as a condition of permit approval. See Lingle, 544 U.S. at 547, 125 S.Ct. 2074 (noting that Nollan and Dolan not extended beyond special context of exactions re *18 quiring dedication of private property as condition of permit approval); City of Monterey, 526 U.S. at 702-03, 119 S.Ct. 1624 (“[W]e have not extended the rough-proportionality test of Dolan beyond the special context of exactions — land-use decisions conditioning approval of development on the dedication of property to public use.”). Legal scholars who have focused on these cases agree that the issue is up in the air. See, e.g., Mark Fenster, Takings Formalism and Regulatory Formulas: Exactions and the Consequences of Clarity, 92 Cal. L. Rev. 609, 635-42 (2004); Mark Fenster, Regulating Land Use in a Constitutional Shadow: The Institutional Contexts of Exactions, 58 Hastings L.J. 729 (2007).
Given the Court’s description of an “unconstitutional condition,” and the cases it relied upon in Nollan and Dolan as the source of this law, I do not see any principled way to distinguish an unconstitutional condition that requires a permit applicant to give up an interest in land from one that requires the permit applicant to give up anything else that belongs to him. If the condition does not meet the “nexus” and “rough proportionality” tests of Nollan/Dolan, it is invalid. As Nollan and Dolan make clear, such an “exaction” may constitute a “taking”; it is not, however, necessarily a “taking.” Whether a “taking” has occurred ought to depend — and I suggest — does depend on whether any protected interest in land is actually given up. If it is, whether temporarily or permanently, the landowner is entitled to compensation as set forth in the “taking” cases. If, however, the unconstitutional condition does not involve the taking of an interest in land, the remedy of inverse condemnation is not available. In this case, the objected-to condition that was found to be an exaction was not an interest in land; it was the requirement to perform certain off-site mitigation in the form of clean-up of culverts and ditches to enhance wetlands several miles away.
This does not mean that Mr. Koontz was without a remedy for this transgression on the part of the District. He no doubt has several. Most obviously, he could do as was done in the Nollan/Dolan cases, as well as most other subsequently reported cases, and challenge the permit denial or condition as invalid. Mr. Koontz did not have an absolute right to a permit, but he did have an enforceable right to consideration of his permit application, burdened only with constitutional conditions. If he had acquiesced in the District’s unconstitutional demands, he should have had the right to recover whatever “exaction” he had paid or performed. He was not entitled, however, to a judgment in inverse condemnation for the temporary taking of his land. The right to compensation for the temporary or permanent taking of property under Florida law requires that substantially all beneficial value in the land actually be taken. In this case, nothing was ever taken.
The law of “unconstitutional conditions,” which mainly grew out of the government’s attempt to impose conditions on public employment limiting freedom of speech, such as loyalty oaths, is poorly developed in the cases and rarely applied. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Pickering v. Bd. of Edu., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Facile as it may seem to say, getting or keeping a government job and being compensated for the taking of private property are two very different things. In the employment cases, the employee either already had a job, or would have had the job, but for the unconstitutional condition. In those cases, the litigation simply invalidated the condition. To say that an agency’s imposition of a condition on the discretionary grant of *19 a permit to develop real property necessarily “takes” the property until the condition is removed is illogical. If an agency imposes an unconstitutional condition on public employment that deprives a person of his right of free association or free speech, the invalidation of the condition does not require that the government employ, or continue in employment, anyone who was burdened by the condition. The unconstitutional condition is simply removed and the individual may or may not be hired or continued in employment based on constitutional criteria. By imposing an unconstitutional condition, the agency did not “take” the job. In this case, when the District imposed an unconstitutional condition on the application for permit approval, the District did not take the land, and Mr. Koontz was not entitled to be compensated as if it had been taken. Clearly, though, if what was exacted from Mr. Koontz was money or services, not real property, under the reasoning of Nol-lan/Dolan, he could recover it.
For example, in Town of Flower Mound v. Stafford Estates Limited Partnership, 135 S.W.3d 620 (Tex.2004), the Texas Supreme Court considered a case where a developer was required to rebuild a road as a condition to development. The court found that the Town had extracted a benefit to which the Town was not entitled and approved as the measure of damages the cost of the exaction, less the cost of improvements that the developer should have had to pay anyway and special benefits to the development. 135 S.W.3d at 627. It makes no sense that the damages for an exaction that is acceded to is the cost of the exaction, but an exaction not acceded to gives rise to a “taking” of the property.
Another important issue that the United States Supreme Court has also yet to directly address is the issue of whether Nollan and Dolan can apply in a circumstance where the landowner has rejected the condition, and, therefore, nothing has been exacted. See Fenster, 92 Cal. L. Rev. at 639. In Lambert v. City & County of San Francisco, 57 Cal.App.4th 1172, 67 Cal. Rptr.2d 562, 569 (1997), cert. denied, 529 U.S. 1045, 120 S.Ct. 1549, 146 L.Ed.2d 360 (2000), the court concluded that because the condition was rejected “neither a property right nor money was in fact taken ... there is [therefore] nothing requiring review under the Nollan/Dolan/Ehrlich standard.” When the United States Supreme Court denied certiorari review of this decision, Justice Scalia wrote a dissent briefly discussing this issue, calling it “plausible”:
It is undeniable, on the other hand, that the subject of any supposed taking in the present case is far from clear. "Whereas in Nolían there was arguably a completed taking of an easement (the homeowner had completed construction that had been conditioned upon conveyance of the easement), and in Dolan there was at least a threatened taking of an easement (if the landowner had gone ahead with her contemplated expansion plans the easement would have attached), in the present case there is neither a taking nor a threatened taking of any money. If petitioners go ahead with the conversion of their apartments, the city will not sue for $600,000 imposed as a condition of the conversion; it will sue to enjoin and punish a conversion that has been prohibited.
Lambert, 529 U.S. at 1048, 120 S.Ct. 1549 (Scalia, J. dissenting).
The majority’s only response to this point is that the issue was already settled in Dolan because, when it was raised in Justice Stevens’ dissent, the majority ignored the issue. I suggest it was not addressed in the Dolan majority opinion, not because it was so lacking in substance that it did not merit any ink, but because *20 at that procedural juncture in Dolan, it simply was not relevant. Dolan came to the Court through Oregon’s administrative appeal process. Mrs. Dolan sought review of the decision of the Land Use Board of Appeals that a requirement of dedication of a portion of her property for drainage and a bike path were valid conditions to attach to approval of her application for a permit to enlarge her store. The fact that she had not made the dedication was no impediment to her right to appeal the decision. If, after exhaustion of her appeals, the condition were found to be valid, or “constitutional,” she could then decide to accept or decline. All the Court did in Dolan was announce the second prong of the “exactions” test and send it back to see whether she ought to prevail in her appeal.
If we are going to be deciding this issue based on what was not said in an opinion, surely the fact that Justice Scalia never mentioned in his Lambert dissent that this issue already had been decided in Dolan is significant. For my money, given Justice Scalia’s proclivities in this area of the law, for him to refer to the absence of a “taking” as a “plausible” defense to a “takings” claim is a pretty big deal. Besides, in what parallel legal universe or deep chamber of Wonderland’s rabbit hole could there be a right to just compensation for the taking of property under the Fifth Amendment when no property of any kind was ever taken by the government and none ever given up by the owner?
The position that a regulatory taking can occur under a land-use exaction theory in circumstances where the permit is denied and no property interest is actually conveyed may have made some sense in the pre-Lingle world; however, now that Lingle has clarified the proper focus of regulatory takings analysis, the position that a “taking” has occurred solely because the State made an offer that was rejected is untenable. It is not the making of an offer to which unconditional conditions are attached in violation of the limitations of Nollan/Dolan that gives rise to a taking; it is the receipt of some tangible benefit under such coercive circumstances that gives rise to the taking. See Lingle, 544 U.S. at 539-40, 125 S.Ct. 2074.
Faced with the unconstitutional condition offered by the District in this case, Mr. Koontz had several options that he could have pursued. If he performed the mitigation, he could have sought recovery for it,[5] or he could have gotten a judicial determination that the condition was invalid by administratively appealing the District’s decision. Just as with an ordinary inverse condemnation case, if the State demands an interest in land for which it offers no compensation, there is only a “taking” if the interest is actually taken. It is not the demand that is compensable, only the taking. If a landowner decides not to accede, his remedy is to contest the government action. Here, Mr. Koontz elected not to contest the validity of the permit denial decision on any basis other than a “taking.”[6]
Nollan and Dolan are exactly the same. In explaining the concept of an exaction-type of “taking” in Dolan, the Court said that requiring the landowner to dedicate two strips of her property as a condition of approval might be a taking of the dedicated land. There is no suggestion that it was a taking of the entire 1.67 acre parcel. What is “taken” in these cases is what was improperly exacted. In this case, if Mr. Koontz had given in to the District’s condition, gotten his development permit and *21 done the off-site mitigation, he would be entitled to recover the value of the off-site mitigation. If he elected to refuse the offer, he had a judicial remedy to invalidate the condition, just as Mrs. Dolan did. The parcel of land for which he sought the development permit was not, however, in any wise “taken” by the District. The only way a “taking” can even be conceptualized in such a circumstance is by adopting the view that by proposing an “unconstitutional condition” that was rejected, the District forfeited its right (and duty) to protect the public interest to refuse the permit at all.
To suggest that the agency might forfeit its right to refuse or require constitutional conditions for issuance of a permit because the agency guessed incorrectly where the boundaries of “nexus” or “rough proportionality” lay has no basis in logic or in any law that I can find. Nor is it fair or practical. As challenging as this case has been to apply Nollan/Dolan exaction law, I am at least grateful that this case does not involve a nexus/rough proportionality analysis. Reading cases from other jurisdictions where courts have had to struggle with these twin issues shows that this analysis can be extremely complex, but in the final analysis, it is completely arbitrary. See Ocean Harbor House Homeowners Ass'n v. Cal. Coastal Comm’n, 163 Cal. App.4th 215, 77 Cal.Rptr.3d 432 (2008); B.A.M. Dev. L.L.C. v. Salt Lake County, 196 P.3d 601 (Utah 2008). The twin issues of “nexus” and “rough proportionality” might be apparent in some cases at the margins, but in most of these cases, they come down to a judge’s subjective opinion about connection and equivalency. No agency in its right mind will wade into this swamp. It will be too risky for a governmental agency to make offers for conditional permit approvals or to offer a trade of benefits out of fear that the offer might be rejected and the condition later found to have lacked adequate nexus or proportionality. Better to deny the permit and defend the decision under the traditional law of regulatory “takings.”
I recognize that one judge looking at the facts of this case might see reasonable conduct on the part of the District to allow a landowner some flexibility to develop his land, even if it involves wetland destruction, by securing a benefit for the public’s interest in improving wetlands within the same geographic basin, while another judge will see “gimmickry”[7] designed to steal from Mr. Koontz. Surely, even the most extreme view that conditions imposed on the issuance of a permit constitute an “out and out plan of extortion” would, nevertheless, recognize that removal of the unconstitutional condition cannot mean the applicant acquires the right to be free of any condition. Such a judicially-invented notion might not do much harm on fourteen acres in the middle of rural central Florida but in a thousand other contexts, it could be disastrous.
In Nollan, the Court held that the government could impose a condition on the discretionary decision to issue a permit without effecting a taking requiring just compensation if “the permit condition serves the same governmental purpose as the developmental ban.” Nollan, 483 U.S. at 837, 107 S.Ct. 3141. Mr. Koontz had the right to a constitutional condition — no more, no less.
Finally, land-use exaction theory only appears to apply in circumstances where the property owner is faced with a choice between an exaction and permit denial. In this case, Mr. Koontz was never in that position because he had a third option— modification of his development to one *22 acre with no “exaction.” The trial court never found that the proffer of this option by the District was any form of a “taking.”
In summary, correct application of exac-tions law requires the conclusion in this case that, although the off-site mitigation condition for issuance of the permit was invalid, nothing was ever “taken” from Mr. Koontz, in the Fifth Amendment sense of the word, and he has no right to recovery in inverse condemnation.
ON MOTION FOR CERTIFICATION
PER CURIAM.
Upon our consideration of Appellant’s Motion for Certification, we grant the motion and certify the following question to the Florida Supreme Court as one of great public importance:
WHERE A LANDOWNER CONCEDES THAT PERMIT DENIAL DID NOT DEPRIVE HIM OF ALL OR SUBSTANTIALLY ALL ECONOMICALLY VIABLE USE OF THE PROPERTY, DOES ARTICLE X, SECTION 6(a) OF THE FLORIDA CONSTITUTION RECOGNIZE AN EXACTION TAKING UNDER THE HOLDINGS OF NOLL AN[1] AND DO-LAN[2] WHERE, INSTEAD OF A COMPELLED DEDICATION OF REAL PROPERTY TO PUBLIC USE, THE EXACTION IS A CONDITION FOR PERMIT APPROVAL THAT THE CIRCUIT COURT FINDS UNREASONABLE?
QUESTION CERTIFIED.
GRIFFIN, ORFINGER and TORPY, JJ., concur.

. Calvert Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1055 (1936).

. Elizabeth Johnson was the supervising regulatory scientist for the District that reviewed the original permit application in 1994 and performed an onsite assessment. She testified that the amount of mitigation required, based on “the quality of the habitat and the species that would likely utilize that type of habitat,” was a preservation mitigation ratio that was well within the mitigation formula in use by the District at that time.

. The trial court said:
Although the St. Johns District has argued otherwise, this court reads that language and the DCA opinion as mandating a trial on the issue of whether there has been a taking. The opinion does not make it clear precisely what legal theory of "taking" the DCA had in mind in its remand. The phrase “all that he could do and still retain an economic use of his property” is read by the District's attorney as saying the DCA perceived the issue on taking as whether the St. Johns District's conditions denied Mr. Koontz all or substantially all of the economically viable uses of his property. If so, one must wonder why the case was reversed and remanded. In that reading there is no issue to be tried since Mr. Koontz does not contend he has lost all or substantially all economically viable use of his property by reason of the conditions he has challenged.
The DCA opinion must be read in its entirety, and the footnotes are important parts of *17 the opinion. In trying to follow the mandate this court has read the opinion many times and listened to and read lengthy arguments about it. To accept the interpretation of the opinion by Mr. Koontz’ counsel seems the more prudent choice. Therefore, the case was tried on whether the off-site mitigation required by the District was an unreasonable exercise of police power. The DCA opinion is consistent with reading the Nollan and Dolan cases as providing constitutional tests applicable to the Koontz property.

. The District urged that Mr. Koontz had suffered no damage at all because his property had more than tripled in value during the eleven years.

. See Town of Flower Mound, 135 S.W.3d at 630.

. See § 373.617(2), Fla. Stat. (1993).

. Dolan, 512 U.S. at 389, 114 S.Cl. 2309.

. Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

. Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).