# NO. 12-20-00195-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JASON BEN BRYANT AND CALYN FLORES, APPELLANTS* | *§* | *APPEAL FROM THE 354TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *JACK W. HAWTHORNE AND KAREN HAWTHORNE, APPELLEES* | *§* | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jason Ben Bryant and Calyn Flores appeal the trial court's order granting a declaratory judgment and permanent injunction in favor of Jack W. Hawthorne and Karen Hawthorne. Appellants present what we construe as four issues for our consideration. We affirm.

### BACKGROUND

The Hawthornes' primary place of residence is situated on an approximately eight-acre tract of land in Rains County, Texas. Appellants own an adjoining five-acre tract, on which they operate an automotive wrecking and salvage yard. On March 12, 2020, the Hawthornes sued Appellants for a declaratory judgment alleging that they were operating a salvage yard on their property in violation of state and county law. The Hawthornes alleged various other causes of action, including negligence, negligence per se, and nuisance. In addition to seeking a declaratory judgment, the Hawthornes requested a temporary and permanent injunction, monetary damages, exemplary damages, and attorney's fees.

1

The Hawthornes alleged that Appellants operated a salvage yard in violation of the Rains County Automotive Wrecking and Salvage Yard Regulations (Rains County Regulations) because Appellants

1. Did not have a license to operate the salvage yard.
2. Failed to screen the salvage yard.
3. Located the operations of the salvage yard within fifty feet of State Highway (SH) 19, County Road (CR) 1280, and CR 1285.
4. Have discharged automotive fluids onto the ground including but not limited to, fuel, lubricating oils and greases, hydraulic fluids, antifreeze/coolant compounds, brake fluids, liquid tire leakage repair compounds or storage battery acids.
5. Have discharged fluids generated by the application of cleaning solutions or water used for cleaning automotive parts or assemblies.
6. Have improperly stored batteries.
7. Have improperly stored tires in failing to shelter them from precipitation and therefore allowing water retention, creating a mosquito breeding environment.[1]

The Hawthornes alleged that Appellants violated the Texas Transportation Code by failing to screen the yard, locating it within fifty feet of SH 19, CR 1280, and CR 1285 and locating it within fifty feet of Appellants' property line.[2] The Hawthornes sought injunctions pursuant to the Transportation Code and the Rains County Regulations.[3]

The trial court set a hearing on the Hawthornes' motion for a temporary injunction on March 27, 2020. Appellants did not attend the hearing. Appellants concede they were served with notice of the hearing but claim a staff member from the Rains County District Clerk's office told them that the hearing was rescheduled for May 22, 2020. After Appellants did not appear for the hearing, the trial court considered the application by written submission due to the COVID 19 disaster declaration and emergency orders. Appellants submitted no evidence or other correspondence to the trial court in opposition to the Hawthornes' application. On March

---

[1] *See* RAINS CTY. TEX., RAINS CTY. AUTO. WRECKING & SALVAGE YARD REGULATION § 4 (requiring screening at least eight feet in height around automotive wrecking and salvage yards), 5(A)(1-10) (detailing requirements for licensure of an automotive and salvage yard including requirement that location of yard may not be within fifty feet of any road subdivision, residence, business or waterway) (May 22, 2008).

[2] *See* TEX. TRANSP. CODE ANN. § 396.021 (West 2013) (requiring screening on automotive wrecking and salvage yard at least six feet in height along portion of yard that faces public road or residence); 396.022(a)(1), (2) (West Supp 2020) (automotive wrecking and salvage yard may not be located within 50 feet of right-of-way of a public street or state highway or within 50 feet of nearest property line of a residence).

[3] *See* RAINS CTY. TEX., RAINS CTY. AUTO. WRECKING & SALVAGE YARD REGULATION § 7 ("Any person is entitled to injunctive relief to prevent a violation or threatened violation of this ordinance as provided for in the Texas Transportation Code 396.002."); TEX. TRANSP. CODE ANN. § 396.002 (West 2013) ("A person is entitled to an injunction to prohibit a violation or threatened violation of this chapter or of a county ordinance adopted under this chapter.")

29, the trial court granted the Hawthornes' application for a temporary injunction which prohibited Appellants from operating a salvage yard. The temporary injunction further ordered Appellants to remove all wrecked and junked vehicles before April 15. The order was to remain in force until a final judgment was rendered in the case.

On April 3, Appellants filed a motion to set aside the temporary injunction. On April 9, the trial court held a hearing on Appellants' motion. Appellants appeared pro se. Flores testified that Jack Hawthorne was watching Appellants and possibly videotaping them, and Appellants feared he might have a weapon. The Hawthornes objected to the relevance of Flores' testimony, and Flores responded that she had to remove "approximately 300 cars and difference pieces of equipment off of this property by April the 15th." Flores went on to testify that Jack threatened to "shoot them" and Appellants did not feel safe entering the property to remove the wrecked vehicles to comply with the temporary injunction. The Hawthornes again objected to the relevance of Flores' testimony, but the trial court allowed Appellants to present testimony on "the situation if [Appellants] feel like they're in danger or not able to remove the items from the property" because that "certainly would go to the nature of the injunction that's been granted." Flores further testified that Appellants were not operating a wrecking yard on the property. She explained that the cars on the property are owned by Mr. Bryant and Glen Askew and Appellants do not sell parts off the cars. Flores testified that Appellants "have been through commissioners courts [sic] multiple times, and there's no business." She testified "[w]e may come down on the weekends [or]...we may not." She reiterated "I mean nobody is there...[t]here's no business sign...[t]here's no electricity on the property." She testified that "[t]hese cars are simply sitting there." Flores testified that they had understood the screening requirements but testified Appellants had been unable to screen the yard because there had been too much rain and the ground was too wet.

Askew, Bryant's business associate and friend, testified that he does not own Appellants' property but stores approximately one hundred and twenty-five to one hundred and fifty cars that he owns on Appellants' property. Askew testified that he did not feel safe on Appellants' property because Jack threatened to kill him. Although Askew contacted the Rains County Sheriff's Office, they did not arrest Jack. Askew denied that he or Appellants operated a wrecking yard and reiterated Flores's position that his vehicles were merely stored on Appellants' property. Askew testified that he had not fenced the yard because he does not feel

3

safe due to Jack's threats and because the ground was too wet. On cross examination, Askew conceded towing vehicles he acquired from his towing business to Appellants' property. Askew also conceded that he and Bryant appeared before the Rains County Commissioners' Court in January and represented to the court that they were not aware of the Rains County Regulations and the attendant requirements to operate a salvage yard. Askew admitted that he and Bryant represented to the Commissioners' Court that they are not operating a salvage yard but "intend to and we intend to make every effort to come into compliance with the [Rains County Regulations]."

Askew further admitted that he was stacking the vehicles on Appellants' Property within two to three feet of the Hawthornes' privacy fence. He testified that there were several old motor homes and recreational vehicles, along with around 200 to 300 different vehicles, tractor-trailers, tires, large commercial tractors, and a vehicle crushing machine on Appellants' property. Askew conceded that they crushed vehicles on the property but had done so only once. Askew testified that he employed workers to remove the crushed vehicles off the property with large commercial tow trucks.

Jack Hawthorne and Patsy Marshall, a Rains County Commissioner, testified on behalf of the Hawthornes' application for a temporary injunction. Their testimony was substantially similar to their testimony at the final hearing, as discussed below. Ultimately, the trial court denied Appellants' motion to set aside the temporary injunction but entered an amended order granting the temporary injunction which allowed Appellants until June 9, 2020 at 5:00 p.m. to remove all wrecked and junked vehicles stored on their real property.

The final hearings were held on June 26 and July 7. Appellants continued to represent themselves through the June 26 hearing but were represented by counsel for the final hearing on July 7. At the June 26 hearing, the Hawthornes called Patsy Marshall, Don Spencer, a real estate agent, and Jack. Marshall and Jack both testified that Appellants' salvage yard was located within fifty feet of the Hawthornes' property line. Marshall testified that Appellants did not have a license to operate the salvage yard on their property and had not, as of the day of the hearing, applied for one. She further testified that Appellants failed to screen the yard in compliance with the Rains County regulations. Jack confirmed that the yard was within fifty feet of his property line and SH 19, CR 1280, and CR 1285 and further, the yard had no screening as required by state and county law. Maps from different views and angles were admitted into evidence which

4

depict Appellants' property, the Hawthornes' property, and SH 19, CR 1280, and CR 1285. Photographs taken from the summer of 2019 show Appellants' property filled with hundreds of vehicles. Several of the vehicles are lined up on Appellants' property and are situated so that they are almost abutting the Hawthornes' privacy fence. The Hawthornes' privacy fence is directly adjacent to their improved driveway. The improved driveway is circular and runs directly around the Hawthorne's primary residence. Clearly visible in the photographs are vehicles in the Appellants' yard abutting the culverts connected to State Highway 19 and County Road 1280. The photographs also confirm that Appellants' yard is not screened.

On July 7, the trial court continued the final hearing. On July 13, the trial court announced its ruling. On August 4, the trial entered a final written order permanently enjoining Appellants from operating a junkyard and an automotive wrecking and salvage yard on their property and ordered Appellants to pay the Hawthornes' attorney's fees. Appellants objected that the Hawthornes' failed to submit evidence supporting the attorney's fees award. On August 14, the trial court held a hearing and allowed the Hawthornes to present evidence regarding their attorney's fees. This appeal followed.

## TEMPORARY INJUNCTION

Appellants' brief labels one argument with two subparts, "argument point one" (first issue) and "argument point two" (second issue). Appellants' briefing on the first issue focuses on complaints about various rulings the trial court made during the hearing on the Hawthornes' application for a temporary injunction. Appellants argue that "[t]he trial court repeated abused [sic] its discretion in favor of the [Hawthornes] which resulted in several clear and prejudicial errors of law that harmed the Appellants." They go on to state that

> The actions of the trial court, including shifting the burden of the causes of action from the [Hawthornes] to the Appellants at the temporary injunction hearing and repeatedly denying the Appellants' requests for time to hear their motions/objections while repeatedly granting the [Hawthornes'] requests, resulted in several clear and prejudicial errors at law that significantly harmed the Appellants.

Appellants subpoint to the forgoing statement is entitled "[t]he trial court repeatedly abused its discretion during the temporary injunction proceeding of this case which had a determinantal

[sic] effect on the final outcome." Appellants assert that the following actions are a "clear abuse of discretion" by the trial court.

> [The trial court] [i]ssued findings of fact as part of its order, without any request by any party, in violation of Texas Rules of Civil Procedure 299a. This demonstrates an exercise a power [sic] of discretion that it does not legally possess as well as proof of the court making a choice that is not within the range of choices permitted by law.
> [The trial court] [m]ade findings of fact on ultimate issues in the case including 'that [the Hawthornes] will probably prevail on a trial on the merits on this cause,' 'the conduct and operations on [Appellants'] [r]eal property has caused a substantial interference with the use and enjoyment of [Appellants'] [r]eal property and constitutes a nuisance' and '[the Hawthornes'] conduct constitutes negligence per se.' These findings resulted in the burden of proof at final trial shifting [from] the [Hawthornes] to the Appellants in lieu of any statutory authority or any caselaw to allow such a shift.
> [The trial court] [i]ssued a temporary injunction that required the [Appellants] to take action to 'correct' an issue rather than to preserve a status quo. Such orders are an attempt by the trial court to possess a power of discretion it does not have and a choice that is not within the range of choices permitted by law.

An order that grants or denies a temporary injunction is an appealable interlocutory order. TEX. CIV. PRAC. & REM. CODE Ann. § 51.014(a)(4) (West Supp. 2020). However, Appellants did not perfect an appeal of the temporary injunction, and thus, Appellants' arguments with respect to the trial court's alleged abuses of discretion in the temporary injunction hearing are waived. *See Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 834 (Tex. App.—Austin 1984, no writ).

Moreover, a temporary injunction remains in force only until a final decree is rendered by the district court. *City of Corpus Christi v. Cartwright*, 281 S.W.2d 343, 344 (Tex. Civ. App.—San Antonio 1955, no writ). Thus, the entry of a final judgment renders the question of the propriety of a temporary injunction moot. *Id.*; *In Estate of Sheshtawy*, 478 S.W.3d 82, 85 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Isuani v. Manske–Sheffield Radiology Grp., P.A.*, 802 S.W.2d 235, 236 (Tex.1991). Here, the trial court already held a final hearing on the merits and rendered a final judgment including a permanent injunction. Thus, the temporary injunction has expired. We lack jurisdiction to render an opinion on a matter that has become moot. *Ridgepoint Rentals, LLC v. McGrath*, 09-16-00393-CV, 2017 WL 6062290, at *10 (Tex. App.—Beaumont Dec. 7, 2017, pet. denied).

For the above reasons, we do not address Appellants' complaints with regards to the trial court's alleged abuses of discretion in ordering the temporary injunction.

In their "point two" (second issue), Appellants argue "the [t]rial [c]ourt violated the due process rights of the Appellants which resulted in an unlawful taking." Appellants argue that the actions taken by the trial court constitute a violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution because the Appellants were deprived of procedural due process. *See* US CONST. AMEND. XIV; Tex. Const. art. 1, § 19.

Several types of takings claims exist. ***Town of Flower Mound v. Stafford Estates Ltd. P'ship***, 71 S.W.3d 18, 29 (Tex. App.—Fort Worth 2002), *aff'd*, 135 S.W.3d 620 (Tex. 2004). A physical taking may occur when the government authorizes an unwarranted physical occupation of an individual's property. ***Id.*** A regulatory taking may occur when governmental land-use regulation deprives a landowner of all economically viable use of his land or when the land-use regulation does not substantially advance a legitimate state interest. ***Id.*** Appellants have not identified what type of taking they contend occurred, nor has Appellant cited any authority, except for the due process clause of the United States and Texas Constitutions, for the contention that the injunction constitutes a taking. *See* US CONST. AMEND. XIV; Tex. Const. art. 1, § 19. Nor have Appellants provided any legal analysis for how the injunction constitutes a taking. *See* TEX. R. APP. P. 38.1.(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Instead, Appellants segue their takings argument into an argument that the injunction is overbroad.

We review the scope of an injunction for an abuse of the trial court's discretion. ***Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC,*** 531 S.W.3d 829, 849 (Tex. App.—Corpus Christi 2017, no pet.); *see also* ***Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.***, 975 S.W.2d 546, 560 (Tex. 1998). A trial court abuses its discretion by entering an overly broad injunction which grants more relief than a plaintiff is entitled to or by enjoining a defendant from conducting lawful activities or from exercising legal rights. ***Fairfield Estates L.P. v. Griffin***, 986 S.W.2d 719, 723 (Tex. App.—Eastland 1999, no pet.) (citing ***The Republican Party of Tex. v. Dietz***, 940 S.W.2d 86, 93 (Tex.1997)).

Appellants argue that the permanent injunction: (1) is overbroad because it orders them to comply with the regulations of every county within the entire state of Texas, as well as any state regulations, on any property the Appellants own; (2) is overly broad because it interferes with the rights of the Appellants to lawfully operate their business, store vehicles, or exercise any other

7

right; (3) deprives them of their right to operate a junk/wrecked car business even if they comply with each and every county and state regulation; and (4) deprives Appellants of their liberty, property, and privileges without the protections of due process in clear violation of the Texas Constitution Article I, Section 19 because they are effectively prohibited from operating any business, even their lawfully operated businesses in Hopkins and Rockwall counties.

Appellants omits from their briefing that the judgment clearly defines Appellants' real property by its metes and bounds description in Rains County. Thus, the references in the judgment to Appellants' real property apply to the property Appellants own in Rains County and does not affect Appellants' businesses in other counties. Moreover, the judgment refers to Texas and Rains County regulations, not other county or state regulations, because it contains a declaration that Appellants operated an automotive wrecking and salvage yard in violation of Rains County Automotive Wrecking and Salvage Yard Regulations and in violation of Chapter 396 of the Texas Transportation Code. *See* TEX. CIV. PRAC. & REM. CODE Ann. § 37.003 (West 2020) ("A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed..."); *see also* TEX. TRANSP. CODE Ann.§ 396.001-.045 (West 2013 and West Supp. 2020).

To the extent that Appellants argue the injunction is overbroad because it does not allow them to operate a salvage yard on their property, even if they comply with the Texas Transportation Code and Rains County Regulations, we disagree. Part of the trial court's reasoning for enjoining Appellants from operating a salvage yard on their property is the location of the yard. Evidence at the final hearing demonstrated that the yard is located within fifty feet of the Hawthornes' property line, on which their primary residence is situated, and three public roadways. This is in violation of the state and county laws. *See* RAINS CTY. TEX., RAINS CTY. AUTO. WRECKING & SALVAGE YARD REGULATION § 4, 5(A)(1-10) (May 22, 2008); *see also* TEX. TRANSP. CODE ANN.§ 396.022(a)(1), (2) (West Supp. 2020). Appellants have not shown how they could possibly legally operate a salvage yard on their real property due to the proximity of their land to the Hawthornes' land and the public roadways. Thus, the injunction is not overbroad because it does not enjoin Appellants from conducting lawful activities or from exercising legal rights. *See **Griffin**,* 986 S.W.2d at 723. We overrule Appellants' second issue.

## DENIAL OF HEARING ON MOTION/CONTINUANCE

In what we construe as their third issue, Appellants complain that the trial court's "repeated denial" of their "requests for [h]earings/[m]otions" while "[r]epeatedly" granting the Hawthornes' "[h]earings/[m]otions" constitutes an abuse of discretion. Appellants argue that the trial court abused its discretion by failing to hear Appellants' "Objection to the Order of Injunction and Motion to Strike Plaintiff's Amended Order Granting Temporary Injunction" at the July 7 hearing. As the title suggests, this filing contains several arguments about the propriety of the temporary injunction.

A trial court abuses its discretion if it acts without reference to any guiding principles or its actions are arbitrary and unreasonable under the circumstances of the case. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). As previously discussed, a temporary injunction becomes moot when the trial court renders a final judgment. *Cartwright*, 281 S.W.2d at 344. Thus, we cannot conclude that the trial court abused its discretion in refusing to hear Appellants' motion to set aside the temporary injunction after the final hearing on the Hawthornes' request for a permanent injunction had already begun. *See id.*

Appellants also argue the trial court abused its discretion when it denied their request for a continuance of the July 7 final hearing. Appellants argue that they requested a continuance for their newly retained counsel to prepare for the hearing. However, at the hearing, Appellants represented to the trial court that they were requesting a continuance because two witnesses were unavailable. Rule 251 states that "[n]o application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. If the ground for the motion is want of testimony, the moving party:

> shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such due diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

TEX. R. CIV. P. 252.  We review a trial court's denial of a motion for continuance for an abuse of discretion.  ***Gregg v. Cecil***, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ).

Appellants did not file a written motion for continuance or submit an affidavit addressing the requirements of Rule 252.  *See* TEX. R. CIV. P. 251; 252.  If an application for continuance does not conform to the provisions of a statute or rule regulating continuances, the granting of relief is within the sound discretion of the trial court.  ***D.F. v. State***, 525 S.W.2d 933, 941 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).  It will be presumed, in the absence of a showing to the contrary, that the court has not abused its discretion.  ***Id.*** (citing ***Watson v. Godwin***, 425 S.W.2d 424, 430 (Tex. Civ. App.—Amarillo 1968, writ ref'd n.r.e.)).  When, as alleged here, the ground for continuance is the want of testimony, the movant must show  (1) the witness's testimony is material,  (2) how said testimony is material, (3) the exercise of due diligence in procuring the witness's testimony and the cause of the failure, if known, (4) that such testimony cannot be procured from any other source, and (5) the name and address of the witness and what the testimony is expected to prove.  *See* TEX. R. CIV. P. 252.  Appellants not only failed to file a written motion for continuance supported by affidavit but further failed to orally address the requirements of Rule 252 at the hearing.  Thus, because Appellants did not comply with the rules governing continuances, we presume the trial court did not abuse its discretion in overruling Appellants' motion for continuance.  We overrule Appellants' third issue.

### DUE PROCESS/JUDICIAL BIAS ARGUMENTS

In what we construe as their fourth issue, Appellants argue that the trial court was biased against them and denied them due process of law. Appellants argue that the following actions by the trial court amounted to a violation of due process and show judicial bias:

1. Granting the [the Hawthornes'] Request for Default prior to the answer deadline.

2. Finding that "[the Hawthornes] will probably prevail on a trial on the merits on this cause," "the conduct and operations on Defendants' Real property…constitutes a nuisance," and "Defendants' conduct constitutes negligence per se" during the hearing on the temporary injunctions on April 9.

3. Shifting the burden from the [Hawthornes] to the Appellants...as a result of the temporary injunction hearing.

4. Failing to allow the Appellants... to address the burden-of-proof shift because [c]ounsel for Appellants had not "filed timely," while allowing the re-opening of testimony after the final

judgment was signed (twice) to allow [the Hawthornes'] counsel the opportunity to testify on attorney's fees.

5. Awarding attorney's fees without finding any other specific monetary damage.[4]

Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Due process also requires a neutral judge with no actual bias against the defendant or interest in the outcome of the particular case. *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S. Ct. 1793, 1797, 138 L. Ed. 2d 97 (1997). However, only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible. *Markowitz v. Markowitz*, 118 S.W.3d 82, 87 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Such rulings are generally best brought on appeal as assigned error, not as evidence of judicial bias. *Id.*

First, we note that the trial court did not grant a default judgment. The trial court granted a temporary injunction pending final trial after Appellants failed to appear for the hearing on the temporary injunction. Due to the emergency orders related to the ongoing pandemic, the trial court considered the application by submission and required testimony to be submitted in writing. Appellants did not submit any evidence. After the trial court granted the temporary injunction, Appellants filed a motion to set aside the "default judgment." As a result, the trial court conducted a full evidentiary hearing and allowed testimony and evidence to be presented by both parties. After the hearing, the trial court entered an amended order granting the temporary injunction.

Appellants argue that the trial court's findings listed above "shifted the burden of proof to Appellants...to disprove the trial court's findings." However, as the Hawthornes correctly point out, Rule 683 of the rules of civil procedure require "[e]very order granting an injunction...shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail...the act or acts sought to be restrained..." Tex. R. Civ. P. 683. Moreover, a temporary injunction should only issue if the applicant establishes (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable

---

[4] The trial court ordered attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2020). Appellant assigns no legal error to the trial court's award of attorney's fees except for their argument that the award violates their rights to due process of law and demonstrates judicial bias.

injury in the interim if the injunction is not granted. ***Butnaru v. Ford Motor Co.,*** 84 S.W.3d 198, 204 (Tex. 2002). Appellants cite to Rule 299a to argue that it was error for the trial court to include factual findings in the temporary injunction. *See* TEX. R. CIV. P. 299a ("Findings of fact shall not be recited in a judgment...Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.").

Assuming without deciding that the trial court erred in including the findings in the temporary injunction and not in a separate document, we still fail to see how this "shifted the burden" to Appellants at the final hearing. Nor does Appellant cite any authority for this contention. *See* TEX. R. APP. P 38.1 ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. ***Cardinal Health Staffing Network, Inc. v. Bowen***, 106 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In this case, there was a full trial on the merits. The trial court allowed both sides to present their respective cases to the court. No witnesses were precluded from testifying and no evidence was excluded. Moreover, the trial court's decision to re-open evidence to allow the Hawthornes to put on evidence of their attorney's fees was within its sound discretion. *See* ***Hernandez v. Lautensack***, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied). Its decision to do so, and its decision to award attorney's fees after a full hearing does not violate Appellants' rights to due process of law. Thus, for the above reasons, we conclude the record does not demonstrate that Appellants were deprived of due process. *See* ***Than***, 901 S.W.2d at 930.

Nor does the record demonstrate the trial judge was biased. Appellants do not argue, nor does the record demonstrate, that the trial judge (1) had a pecuniary or other direct personal interest in the outcome of the case; (2) prejudged the case; (3) became embroiled with them or their counsel; or (4) showed personal favoritism towards the other party. Thus, their complaints do not raise the kind of fundamental procedural unfairness that the United States Supreme Court has held to be an unconstitutional violation of due process rights. *See* ***Aetna Life Ins. Co. v. Lavoie***, 475 U.S. 813, 820, 106 S. Ct. 1580, 1585, 89 L. Ed. 2d 823 (1986) (pecuniary interest); ***Mayberry v. Pennsylvania***, 400 U.S. 455, 463, 91 S. Ct. 499, 504, 27 L. Ed. 2d 532 (1971) (personal embroilment with defendant or counsel); ***Tumey v. State of Ohio***, 273 U.S. 510, 522, 47 S. Ct. 437, 441, 71 L. Ed. 749 (1927) (same); ***Earley v. State***, 855 S.W.2d 260, 262 (Tex.

App.—Corpus Christi 1993, no pet.) (prejudging case). Therefore, we overrule Appellants' fourth issue.

## CONCLUSION

Having overruled Appellants' four issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered October 20, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 20, 2021

NO. 12-20-00195-CV

**JASON BEN BRYANT AND CALYN FLORES,**
Appellants
V.
**JACK W. HAWTHORNE AND KAREN HAWTHORNE,**
Appellees

Appeal from the 354th District Court
of Rains County, Texas (Tr.Ct.No. 10836)

THIS CAUSE came to be heard on the appellate record and brief(s) filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellants, **JASON BEN BRYANT AND CALYN FLORES**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*